MEARS, Plaintiff in error, v. STATE, Defendant in error.

*No. State 100.  Argued September 15, 1971.—Decided
October 5, 1971.*
(Also reported in 190 N. W. 2d 184.)

438

The cause was submitted for the plaintiff in error on the brief of *Gerard O'Flaherty* and *Johns, Flaherty, Harman & Gillette* of La Crosse, and for the defendant in error on the brief of *Robert W. Warren,* attorney general, *William A. Platz* and *George L. Frederick,* assistant attorneys general, and *Burleigh A. Randolph,* district attorney of La Crosse county.

ROBERT W. HANSEN, J.  Did the manner in which certain articles taken in the burglary—the furs, the jewelry, the TV set and typewriter, etc.—came into police possession constitute constitutionally prohibited search and seizure? [1]  If so, the evidence procured was im-

---

[1] Art. IV, Amendments, U. S. Const.: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, . . ." *See also:* Wis. Const., art. I, sec. 11.

properly admitted at the trial of defendant, and reversal would be required. If not, the challenge to it fails and the conviction stands.

*As to consent search:* Defense counsel spiritedly argues that no one, not even the defendant's mother, was authorized to waive defendant's right not to have the Mears home searched without a warrant. However, we do not here deal with the law of agency or the right of one person to waive another's rights. We deal rather with the question of whether the mother had such equal rights to the use and occupancy of the home as to give her authority to consent to a search of the premises. This court has stated it to be ". . . well established that where two persons have equal rights to the use or occupancy of premises either may give consent to a search and the evidence thus disclosed can be used against either of them." [2]

On the record here, it is clear that the mother had at least equal rights to the use and occupancy of the premises which were searched with her consent. In point of fact, she was the sole owner of the home or house involved. The defendant had resided with his mother intermittently from November, 1966, to June 13, 1968, paying her nothing for that privilege. When he got work about June 13, 1968, he began paying $10 a week toward the expense of groceries. Earlier in his stays at home, the defendant had slept in an upstairs room, but

[2] *Embry v. State* (1970), 46 Wis. 2d 151, 159, 174 N. W. 2d 521 (cases cited). *See also: Frazier v. Cupp* (1969), 394 U. S. 731, 740, 89 Sup. Ct. 1420, 22 L. Ed. 2d 684, upholding consent search of duffel bag by defendant's cousin, stating: "Since Rawls was a joint user of the bag, he clearly had authority to consent to its search." *See also: Maxwell v. Stephens* (8th Cir. 1965), 348 Fed. 2d 325, certiorari denied (1965), 382 U. S. 944, 86 Sup. Ct. 387, 15 L. Ed. 2d 353; *United States ex rel. Combs v. La Vallee* (2d Cir. 1969), 417 Fed. 2d 523, certiorari denied (1970), 397 U. S. 1002, 90 Sup. Ct. 1150, 25 L. Ed. 2d 413, both upholding searches consented to by mother where son lived with her and had a separate sleeping room.

agreed to use the downstairs bedroom so that his mother might better attend to her mother, who was staying with them and was ill, by both ladies sleeping in upstairs bedrooms. The defendant's parents had lived together in the Mears home until the death of his father about two years before the time here involved.

We see the mother-son relationship here only as a fact or factor supportive of the finding that the mother was a person having rights at least equal to those of the defendant to the use and occupancy of the Mears home. It is her right to use and occupy that gives validity to her consent to the search. Other courts have gone further in very nearly identical situations. Holding that defendant's mother could validly grant permission to police officers to search a bedroom occupied by her twenty-four-year-old son in her home, one state court referred to the mother's "duty to act." [3] We deal with her authority to give consent as a person entitled to use and occupancy, not with her duty as mother or citizen. Upholding the validity of a search consented to by a father of a room occupied by his twenty-two-year-old son in the family home, a neighboring state held the father's rights in the house ". . . superior to the rights of children who live in his house." [4] We agree with the Minnesota court that

[3] *State v. Vidor* (1969), 75 Wash. 2d 607, 610, 452 Pac. 2d 961, 963, holding and stating: "The search conducted by the Tacoma Police Department pursuant to permission given by appellant's mother was a lawful rather than a constitutionally unreasonable one. The mother had every right to do what she did. In fact, it could be said it was her duty to act in support of and in compliance with existing positive law. Doubtless the situation was a trying and troublesome one for her. She is to be commended for her action rather than rebuffed by the law and the courts."

[4] *State v. Kinderman* (1965), 271 Minn. 405, 409, 136 N. W. 2d 577, certiorari denied (1966), 384 U. S. 909, 86 Sup. Ct. 1349, 16 L. Ed. 2d 361, ". . . in this case the consent was given by the father who did not wish to have property on his premises which did not belong there, and who joined with the law enforcement

a child, dependent or emancipated, living in the home is not in the position of a person renting a room in a hotel or motel.[5] However, it is enough here for us to find that the mother had at least equal rights in her own home with those of her son, including the right to consent to a search of the premises.

Two federal appellate court decisions make clear that the relationship between a defendant and the person giving consent to a search of a shared home is material only as it relates to the question of equal right to use and occupancy. In one, involving the consent to a police search given by the wife of a defendant, the Eighth Circuit United States Court of Appeals stated:

". . . We hold . . . that the right of the wife here to enter the home which was in her possession and control cannot be seriously questioned and that her invitation to and authorization to the officers to enter and search was an outgrowth thereof. It is not a question of agency, for a wife should not be held to have authority to waive her husband's constitutional rights. This is a question of the wife's own rights to authorize entry into premises where she lives and of which she had control. . . ."[6]

Similarly, where a young woman, not his wife, with whom the defendant, a married man, was living voluntarily consented to a police search of the premises without a warrant, the Seventh Circuit United States Court

officers in determining if such a fact were true. We can agree that the father's 'house' may also be that of the child, but if a man's house is still his castle, in which his rights are superior to the state, those rights should also be superior to the rights of children who live in his house. . . ."

[5] *Id.* at pages 409, 410. As to lack of authority of hotel room clerk to authorize a police search of the room of a guest, *see: Stoner v. California* (1964), 376 U. S. 483, 84 Sup. Ct. 889, 11 L. Ed. 2d 856.

[6] *Roberts v. United States* (8th Cir. 1964), 332 Fed. 2d 892, 896, 897, certiorari denied (1965), 380 U. S. 980, 85 Sup. Ct. 1344, 14 L. Ed. 2d 274.

of Appeals held the search to be constitutionally proper, stating:

"The defendant's argument that Miss Hilan's consent could not affect his right to be free from unreasonable searches must also be rejected. In United States v. Sferas, supra, 210 F. 2d at 74, we acknowledge the rule that 'where two persons have equal rights to the use or occupation of premises, either may give consent to a search, and the evidence thus disclosed can be used against either.' The rule has been applied by other courts to searches following consent given by the wife of the defendant, e. g. Roberts v. United States, 332 F. 2d 892 (8th Cir. 1964), cert. denied, 380 U. S. 980, 85 S. Ct. 1344, 14 L. Ed. 2d 274 (1965) and by a woman standing in the position of the defendant's wife, Nelson v. People of State of California, 346 F. 2d 73, 77, (9th Cir.), cert. denied, 382 U. S. 964, 86 S. Ct. 452, 15 L. Ed. 2d 367 (1965). The considerations most applicable to the third person's consent in such cases are not related to principles of agency connecting the defendant with the person acquiescing in the search, but rather concern the reasonableness, under all the circumstances, of a search consented to by a person having immediate control and authority over the premises or property searched. [cite omitted] Miss Hilan lived in the apartment, and therefore had authority to consent to a search of it. . . ." [7]

Under all the circumstances, we find the search of the Mears home by the police entirely reasonable, it being consented to by a person having full authority to consent to a search of the home by police without a warrant.

*As to the furs:* From the foregoing, it follows that all items seized by the police in the search of the Mears home —the thermometer that was in the kitchen; the electric shaver that appears to have been in the bathroom; the TV set, the typewriter and door opener that were in the bedroom; and the four fur pieces that were where the mother had placed them after exhibiting them to the

[7] *United States v. Airdo* (7th Cir. 1967), 380 Fed. 2d 103, 106, 107, certiorari denied (1967), 389 U. S. 913, 88 Sup. Ct. 238, 19 L. Ed. 2d 260.

sergeant—were properly admitted as exhibits in the trial of the defendant. However, it should be noted that the fourth amendment prohibiting unreasonable searches and seizures applies to public, not private, actions.[8] As a leading text puts it, ". . . Acts of private citizens are not within the constitutional ban [of the fourth amendment]."[9] In the case before us, it was the mother of the defendant who found the four stolen fur pieces in the closet in her home. It was she who removed them and exhibited them to the police sergeant whom she had summoned to her home. It was she who stated that they did not belong in her house, informing the law officer of her suspicion that the furs were stolen. It is true that, after noting the name of the furrier and the tag giving the name of the owner, the officer returned the four fur garments, but he returned them to the possession of the mother. He elected to leave them with her while he checked to determine if they had been stolen, and, if so, from whom. When the police returned to the home, the furs were wherever the mother had placed them. When they were exhibited by the mother to the police, they were the products at the most of a private search, and the products of a private search are not subject to the exclusionary rule.[10] Obviously, testimony as to the mother's initial presentation of the fur pieces to the

---

[8] "The fourth amendment gives protection against unlawful searches and seizures, and as shown in the previous cases, its protection applies to governmental action. Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies; . . ." *Burdeau v. McDowell* (1921), 256 U. S. 465, 475, 41 Sup. Ct. 574, 65 L. Ed. 1048.

[9] George, *Constitutional Limitations on Evidence in Criminal Cases* (1966 ed.), page 47, citing *Burdeau*. Citing and recognizing *Burdeau: Novak v. State* (1925), 185 Wis. 616, 618, 200 N. W. 369, 202 N. W. 336.

[10] *Burdeau v. McDowell, supra,* at page 475; *Coolidge v. New Hampshire* (1971), 403 U. S. 443, 91 Sup. Ct. 2022, 29 L. Ed. 2d 564.

police and as to the content of the identifying labels found on them at that time would be admissible. Additionally, where the fur pieces were returned to the possession of the mother, not the defendant, the four stolen garments, under the facts here, did not come into police possession as the result of a police search of the premises. The turning over to the police by the mother of the four fur pieces could not be an unreasonable search and seizure because, in the constitutional sense, it was not a search at all.

*As to the jewelry:* There remains the claim of the defendant that the taking of the leather case from the rear seat of the automobile in which he was sitting at the time of his arrest constituted an unlawful search and seizure. It is not disputed that the brown leather case (meeting the description of an article taken in the burglary) was in plain view of the arresting officer. It cannot be disputed that at the time the arresting officer had probable cause to arrest the defendant on the charge for which he did arrest him—the possession of stolen property, to wit, the four fur pieces exhibited to the arresting officer by the mother and identified by him as having been stolen. It follows that the officer had the right to be where he was, and, that being true, he had the right to see what he saw. The situation goes beyond the right to make a search incidental to an arrest.[11] Here the brown leather case was in plain view on the rear seat of the car. There is here no ". . . prying into hidden places for that which is concealed."[12] The brown leather case

---

[11] *See: State v. Stevens* (1965), 26 Wis. 2d 451, 458, 459, 132 N. W. 2d 502, stating the Wisconsin rule: "A search incidental to an arrest whether of the person or place must bear a reasonable relationship in time and place to the arrest. . . . If in the process of such reasonable search contraband or other material is found which may constitute evidence of other crimes, such contraband and material may be seized. [citing *Abel v. United States* (1960), 362 U. S. 217, 80 Sup. Ct. 683, 4 L. Ed. 2d 668] . . ."

[12] *Edwards v. State* (1968), 38 Wis. 2d 332, 338, 156 N. W. 2d 397.

and the stolen lockets and bracelets it contained, being in plain view at the time of the arrest, were subject to seizure.[13]

So, as to the brown leather case taken from the rear seat of the defendant's automobile, as to the stolen articles found in the search of the Mears home to which his mother consented, and as to the four fur pieces turned over to the police by defendant's mother, we find no constitutional infirmity in the manner in which they came into the possession of the police.

*By the Court.*—Judgment affirmed.

---

[13] *See: State v. Dombrowski* (1969), 44 Wis. 2d 486, 499, 171 N. W. 2d 349.