STATE, Plaintiff in error, v. McGOVERN, Defendant in error.

*No. 75–569–CR. Submitted on briefs December 2, 1976.—*
*Decided April 19, 1977.*
(Also reported in 252 N. W. 2d 365.)

For the plaintiff in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Thomas J. Balistreri,* assistant attorney general.

For the defendant in error the cause was submitted on the brief of *Carl L. Peterson* and *Peterson & Peterson* of Menomonie.

DAY, J.   This case is before us on a writ of error sought by the state to reverse an order entered by the trial court suppressing admission into evidence of a cigarette butt and a jar of material seized by police in a room in which the defendant was a visitor and alleged by the state to be marijuana.  We hold that under the facts as found by the trial court the evidence was properly suppressed.  We therefore affirm the trial court's order.

In the early morning hours of July 15, 1975 the Dunn County Sheriff's Department received a telephone call from a man complaining that there were loud noises, loud talking and profane language outside his bedroom window.  The dispatcher radioed the zone car that there was a complaint of "loud and profane language outside (complainant's) window," and that someone was urinating on the lawn.  The dispatcher did not mention any complaint of loud music in his testimony.  Menomonie Police Department officer J. M. Stevenson responded and drove to the area.  Officer Ronald Mickelson in another squad car also responded.

Officer Stevenson arrived at the corner of 106th Street and Sixth Avenue in Menomonie at approximately 2:27 a.m.  The house in which the defendant was arrested was on a corner of this intersection.

Officer Stevenson testified he started to walk from his car to the entrance of the house.  When he was approximately five feet from a southeast window, standing on what "would be described as a sidewalk on that block," he observed a flash of light through the window and then a movement which appeared to be that of passing a cigarette from one person to another.  He saw two persons sitting at a desk.

The officers proceeded to the front door.  To reach the door they had to walk through a partially enclosed porch.  Officer Mickelson knocked.  Officer Stevenson

testified someone inside asked them something to the effect, "if we had our clothes on, and Officer Mickelson replied in the manner that we had most of them on." Officer Stevenson said neither patrolman identified himself as a police officer. Before the door was opened, he said, he had formed the suspicion the moving cigarette he saw through the window was marijuana.

Dennis Mardirosian, who was living in a tent in the yard, opened the door. He denied he made any statement inquiring whether the caller at the door had his clothes on.

The entrance opened on to a small foyer with a room on the left and a room on the right. Directly ahead a stairway led to an upper floor. The house was dark, with the exception of a red bulb at the top of the stairs and a small light in the room to the right of the entrance where the defendant was sitting with a friend, John Abernathy who paid rent on the room. The porch was not lighted.

According to Mr. Mardirosian, it was dark. The man who knocked asked if he could come in. "I told him to come on in and he stepped into the doorway, and as soon as he stepped into the light where I could see him, that's the first time I recognized him as a police officer."

It is agreed Officer Mickelson then stated the officers were responding to a noise complaint.

Officer Stevenson said that while his fellow officer was talking to Mr. Mardirosian, Stevenson, standing inside the door, smelled an odor which he thought to be the smell of marijuana. Mr. Mardirosian, however, said there was no conversation. Rather, the officers proceeded directly into John Abernathy's room. The door was open.

Officer Stevenson saw the defendant seated in the room behind a desk. Defendant testified he was seated approximately six feet from the front doorway where

the police first entered. He was holding a cigarette in his right hand. He placed it in an ashtray. There was no conversation for approximately ten seconds. The defendant asked the officers what they were doing there. As the defendant spoke, Officer Stevenson walked toward him in an attempt to seize what the defendant had in his hand, "under the belief that it was marijuana." After stating he was there on a noise complaint, the officer informed defendant he was under arrest for possession of marijuana.

The defendant kept talking, and as he did, he made a motion to the door causing Officer Stevenson to turn his head. As he turned, the defendant took the object from the ashtray and placed it behind him back towards Mr. Abernathy. At times during this brief period the cigarette was in the defendant's hand, and at times in the ashtray, according to the officer's account. Mr. Abernathy took the cigarette and dropped it to the floor. Officer Stevenson picked it up. He also seized a small prescription-type bottle on the desk alleged to contain marijuana.

No music emanated from Mr. Abernathy's room. The only music came from upstairs. Officer Stevenson stated he heard the music because there was no door or enclosure going to the stairway. The trial court found there was "no unusual or extraordinary noise coming from such house."[1]

---

[1] On direct examination Officer Stevenson said he heard loud music coming from the house when he arrived. On cross-examination he stated he was not sure whether the voices were loud or profane. Patrolman Mickelson said he heard voices from the southeast corner of the house loud enough that he could hear them from across the street. The defendant testified music was playing upstairs but it was not loud. In the downstairs room where he was arrested, defendant stated he and Mr. Abernathy had been engaged in a regular conversation. Dennis Mardirosian, who had opened the door, stated another person, who lived in a tent in

The trial court found the house was a rooming house with the foyer being a common area.

The dispositive issue in this case is whether the police had a right to be standing in the foyer when Officer Stevenson smelled the odor which he thought was marijuana. Within moments, he entered the room in which Mr. Abernathy and the defendant were seated in an attempt to seize what the defendant had in his hand "under the belief that it was marijuana." No claim is made the police had probable cause to believe a crime was being committed when the officer saw through a window the glowing object being passed, one hand to another, in the dimly lit room. Nor is it contended the smell of marijuana was discernible outside the house. On the contrary, Officer Mickelson testified he did not smell anything until he and his fellow officer were inside the house.

Noise, the basis of the complaint to which the officers were responding, was not a justification for the entry, and the state does not argue that it was.

The trial court's finding there was no unusual or extraordinary noise coming from the house is not against the great weight and clear preponderance of the evidence and must be accepted here. *State v. Elam,* 68 Wis.2d 614, 624, 229 N.W.2d 664 (1975) ; *State v. Pires,* 55 Wis.2d 597, 603, 201 N.W.2d 153 (1972).

The basic rules applicable to warrantless searches were summarized in *State v. Bell,* 62 Wis.2d 534, 539, 540, 215 N.W.2d 535 (1974) :

"The fourth amendment to the United States Constitution proscribes unreasonable searches and seizures. Recently the supreme court has stated that the ultimate

the yard, earlier in the evening had visited some bars with the defendant and Abernathy, had a loud voice and made a little noise before going to bed.

standard set forth in the fourth amendment is reasonableness. *Cady v. Dombrowski* (1973), 413 U.S. 433, 93 Sup. Ct. 2523, 37 L. Ed.2d 706. This court has consistently adhered to the view that reasonableness is to be determined by the facts and circumstances presented in each case. *State v. Pires* (1972), 55 Wis.2d 597, 201 N.W.2d 153; *State v. Davidson* (1969), 44 Wis.2d 177, 170 N.W.2d 755; *Edwards v. State* (1968), 38 Wis.2d 332, 156 N.W.2d 397. The fundamental rule applicable to searches and seizures is that warrantless searches are per se unreasonable under the fourth amendment except under certain well-defined circumstances. *Johnson v. United States* (1948), 333 U.S. 10, 13, 14, 68 Sup. Ct. 367, 92 L. Ed. 436; *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 454, 455, 91 Sup. Ct. 2022, 29 L. Ed.2d 564. One of the exceptions to the warrant requirement is the plain-view doctrine, and this court has held that a seizure following a plain view is not the product of a search. *Day v. State* (1973), 61 Wis.2d 236, 212 N.W. 2d 489; *State v. Taylor* (1973), 60 Wis.2d 506, 210 N.W.2d 873; *Soehle v. State* (1973), 60 Wis.2d 72, 208 N.W.2d 341; *Mears v. State* (1971), 52 Wis.2d 435, 190 N.W.2d 184; *Warrix v. State* (1971), 50 Wis.2d 368, 184 N.W.2d 189; *State v. Hebard* (1971), 50 Wis.2d 408, 184 N.W.2d 156; *Milburn v. State* (1971), 50 Wis. 2d 53, 183 N.W.2d 70; *State v. Brown* (1964), 25 Wis.2d 413, 418, 130 N.W.2d 760; *Edwards v. State* (1968), 38 Wis.2d 332, 156 N.W.2d 397."

The state argues this case fits the plain view exception to the warrant requirement. Four prerequisites must be met to invoke the doctrine. The police must have a prior justification for the intrusion which placed them in the position to observe the evidence in plain view, the evidence must be in plain view, the discovery must be inadvertent, and the item seized, in itself or in itself with facts known to the officer at the time of the seizure, provides probable cause to believe there is a connection between the evidence and criminal activity. *State v. Bies*, 76 Wis.2d 457, 464, 251 N.W.2d 461 (1977). *State v. Elam, supra,* 68 Wis.2d at 621, 622.

The doctrine of plain view merely supplements the prior justification for the initial intrusion, *State v. Pires, supra,* 55 Wis.2d at 608; the right of the officer to be in the place where the inadvertent view occurs is fundamental to the validity of what follows. *State v. Spraggin,* 71 Wis.2d 604, 610, 239 N.W.2d 297 (1976).[2] The state justifies the initial intrusion by the consent of Mr. Mardirosian.

A search of property, without warrant and without probable cause, but with proper consent voluntarily given, is valid under the fourth amendment. *United States v. Matlock,* 415 U.S. 164, 165, 39 L. Ed.2d 242, 246, 94 S. Ct. 988 (1974).

Sec. 968.10 (2) reads:

". . . *Searches and Seizures; When Authorized.* A search of a person, object or place may be made and things may be seized when the search is made:

". . .

"(2) With consent; . . ."

When a prosecutor seeks to rely upon consent to justify the lawfulness of a search he has the burden of proving that consent was, in fact, freely and voluntarily given. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S. Ct. 2041, 2045, 36 L. Ed.2d 854 (1973). The prosecution is not limited to proof consent was given by the defendant, but may show permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected, *Matlock, supra,* 415 U.S. at 171.

In a footnote to its opinion the U.S. Supreme Court explained the necessary relationship required to give consent.

---

[2] *Also see, Ball v. State,* 57 Wis.2d 653, 665, 205 N.W.2d 353 (1973); *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 29 L. Ed.2d 564, 583, 91 S. Ct. 2022 (1971).

"Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third party consent does not rest upon the law of property, with its attendant historical and legal refinements, see Chapman v. United States, 365 U.S. 610, 5 L. Ed.2d 828, 81 S. Ct. 776 (1961) (landlord could not validly consent to the search of a house he had rented to another), Stoner v. California, 376 U.S. 483, 11 L. Ed.2d 856, 84 S. Ct. 889 (1964) (night hotel clerk could not validly consent to search of customer's room) but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the coinhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."

*See, also, Myers v. State,* 60 Wis.2d 248, 259, 208 N.W.2d 311 (1973) ; *Mears v. State,* 52 Wis.2d 435, 439, 190 N.W.2d 184 (1971) ; *Embry v. State,* 46 Wis.2d 151, 159, 174 N.W.2d 521 (1970).

The foregoing authorities establish that a warrantless search, to be justified by consent, requires the prosecution to prove the consent was granted voluntarily, by one authorized to do so. But it is argued no search took place; consequently Mr. Mardirosian had implied authority, even though he was a visitor, to admit the police to the premises.

The argument no search took place because of plain view plainly begs the question. It may be that technically, no search took place when the police smelled marijuana in the foyer, as plain view does not entail a search. *State v. Spraggin, supra,* 71 Wis.2d at 610. But as pointed out in *State v. Pires, supra,* 55 Wis. at 607:

". . . any evidence seized will at some time be in the 'plain view' of the one who is seizing it. The problem is to identify the circumstances where 'plain view' has

legal significance. The United States Supreme Court, in *Coolidge, supra,* page 465, recently stated:

" 'It is well established that under certain circumstances the police may seize evidence in plain view without a warrant. But it is important to keep in mind that, in the vast majority of cases, any evidence seized by the police will be in plain view, at least at the moment of seizure. The problem with the "plain view" doctrine has been to identify the circumstances in which plain view has legal significance rather than being simply the normal concomitant of any search, legal or illegal.'

" 'Plain view,' alone, is never enough to justify a warrantless seizure."

The state's theory of demoting the status of what took place from a search to some less-protected activity leads it to the conclusion the consent needed to enter the foyer could be implied; Florida and North Carolina cases dealing with property law are cited to buttress this position. But it is too well settled the fourth amendment protects people, not places, *Katz v. United States,* 389 U.S. 347, 351, 19 L. Ed.2d 576, 582, 88 S. Ct. 507 (1967), to avoid constitutional reckoning by resort to property law. " '(T)he premise that property interests control the right of the government to search and seize has been discredited.' *Warden v. Hayden,* 387 U.S. 294, 304, 18 L. Ed.2d 782, 790, 87 S. Ct. 1642." *Id.,* 389 U.S. at 353. *Also, see, Conrad v. State,* 63 Wis.2d 616, 626, 218 N.W. 2d 252 (1974) ; *Edwards v. State,* 38 Wis.2d 332, 340, 156 N.W.2d 397 (1968) ; *Silverman v. United States,* 365 U.S. 505, 511, 5 L. Ed.2d 734, 739, 81 S. Ct. 679 (1961) ; *Jones v. United States* 362 U.S. 257, 266, 267, 80 S. Ct. 725, 733, 734, 4 L. Ed.2d 697, 705, 706 (1960).

A search has been described as "an examination of one's premises or person that . . . implies exploratory investigation or quest, . . ." *Molina v. State,* 53 Wis.2d 662, 668, 193 N.W.2d 874 (1971) *cert. den.* 407 U.S. 923, citing *State v. McCarty,* 47 Wis.2d 781, 786, 177 N.W.2d

819 (1970). What a person seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected if the person's expectation is justifiable. *Katz, supra,* 389 U.S. at 351–353. And a home, quite clearly, is entitled to special dignity and sanctity. *Holt v. State,* 17 Wis.2d 468, 477, 117 N.W.2d 626 (1962), *cert. den.* 374 U.S. 844.

When the police knocked on the outer door separating the porch from the foyer, Officer Stevenson had already formed the suspicion the occupants of Mr. Abernathy's room were smoking marijuana. Upon entry his "exploratory investigation" was quickly underway. The fact the outer door was closed while the door to Abernathy's room was open indicates the room's occupants expected the dividing line between the outer world and their privacy was that outer door. Indeed, the police shared that belief, having stopped to knock. This expectation was not unreasonable and therefore the full protection of the fourth and fourteenth amendments became operative at that threshold. To cross it a valid consent in the full constitutional sense was required.

The trial court found Mr. Mardirosian was not authorized to consent to entry by the police. It stated, "The testimony is likewise uncontradicted that . . . (Mardirosian) was not the owner, or tenant, or occupant of the house, or of any rooms therein and had no authority from any of the occupants, or tenants, or owners to consent for any of them." This finding is not against the great weight and preponderance of the evidence. The record discloses that Mr. Mardirosian was living in a tent on the side yard of the house. When the police knocked he was standing in Mr. Abernathy's room by the door; he had been there a few minutes. There is no evidence that he shared with Mr. Abernathy mutual use

of the property, that he had joint access or control for most purposes, or that the room's occupants assumed the risk one of their number might permit the common area to be searched. Thus, the alleged consent did not meet the criteria of *Matlock, supra*. The burden of proof was, of course, on the state to prove a valid consent. *Schneckloth, supra*.[3] This burden was not met.

Without a valid consent to enter, the justification for that entry must be found at a point before the police entered. But the mere sight of one person passing a cigarette to another is not, standing alone, sufficient to conclude that the cigarette contains marijuana. But that is all the officer observed in the quick glance he made into the darkened room as he passed by the window. Such a sight did not justify an intrusion into the house. The trial court found that the noise the officers were sent to check on was not occurring when they arrived. These findings are not against the great weight and clear preponderance of the evidence.

It is significant that once the officers entered the house, the whole matter of noise emanating from the premises was forgotten. The officers made no arrests nor even admonishments as to noise as far as this record discloses.

The trial court properly suppressed the evidence seized under the circumstances that prevailed here.

*By the Court.*—Order affirmed.

[3] "If anyone may indiscriminately waive the rights of another, the waiver is not a personal one; hence the constitutional privilege would be of no value." *People v. Dent,* 371 Ill. 33, 19 N.E.2d 1020 (1939).