STATE, Plaintiff-Respondent, v. VERHAGEN, Defendant-Appellant.

Court of Appeals

*No. 77–559–CR. Argued August 29, 1978.—*
*Decided October 11, 1978.*
(Also reported in 272 N.W.2d 105.)

For the appellant there were briefs and oral argument by *John M. Wiebusch,* of Oconto.

For the respondent the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

Before Dean, P.J., Donlin and Foley, JJ.

DEAN, P.J.

Four issues are raised on appeal:

(1) Does the defendant have the burden of proof in establishing the illegality of a warrantless search?

(2) Was the defendant's wife authorized to consent to a search of the premises?

(3) Was the marijuana which was found growing near the granary admissible under the "open fields" doctrine?

(4) Must the defendant's statement be suppressed as a fruit of the poisonous tree?

*BURDEN OF PROOF*

The defendant argues, and the state concedes, that the trial court erred in placing the burden on the defendant to prove the illegality of the search. We agree. Warrantless searches are *per se* unreasonable, subject only to a few specifically established and well-delineated excep-

tions. Consent is one such exception. Where the state relies on consent to justify a warrantless search, the burden of proof is on the state to show consent by one authorized to give consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219–22 (1973) ; *Kelly v. State,* 75 Wis.2d 303, 316, 249 N.W.2d 800 (1977) ; *Gautreaux v. State,* 52 Wis.2d 489, 190 N.W.2d 542 (1971).

## AUTHORIZATION TO CONSENT

At the time the defendant's wife signed the form consenting to the search of their property, she had initiated divorce proceedings. She and her children left the premises approximately two weeks before the search. The consent form was prepared by Mrs. Verhagen's divorce counsel and was signed on September 2, 1976, six days before the search. It was delivered to the Sheriff on September 6, 1976. On September 3, 1976, the Family Court Commissioner entered a temporary order awarding "use of the residence of the parties" to the defendant, and ordering the defendant to allow his wife "to remove whatever household furniture or furnishing she desires."

On September 8, 1976, the Sheriff's officers, ostensibly to protect Mrs. Verhagen as she removed her belongings from the house, accompanied the defendant's wife to the couple's home. The defendant left the house, and the search was conducted in his absence.

The officers asked the defendant's wife to help them locate the marijuana. She directed them to an area 100 to 200 feet behind or to the side of the barn where they found marijuana growing on the edge of a "garden." The officers found the marijuana patch by following a water hose from the barn. The hose was part of a sprinkler system used to water the marijuana patch.

Mrs. Verhagen informed the officers that there was more marijuana in the granary. The officers pulled a lock off the granary door and found marijuana inside.

Mrs. Verhagen also showed the officers some marijuana she found in a closet in the house.

The trial court ruled that the defendant's wife had authority to consent to the search of the house, granary, and fields. We find as a matter of law that she had no authority to consent to the search.

The defendant's wife was legally a joint tenant and co-owner of the property with her husband. We hold that her rights under property law do not give her the authority to consent to a search. *State v. McGovern,* 77 Wis.2d 203, 252 N.W.2d 365 (1977); *See also, Stoner v. California,* 376 U.S. 483, 488 (1964). The United States Supreme Court addressed the common authority needed to give valid consent to search in *United States v. Matlock,* 415 U.S. 164, 171, N. 7 (1974):

Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third party consent does not rest upon the law of property, with its attendant historical and legal refinements, . . . but rests rather on *mutual use of the property by persons generally having joint access or control for most purposes,* so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right *and that the others have assumed the risk that one of their number might permit the common area to be searched.* (Emphasis supplied.)

The State argues that Mrs. Verhagen had authority to consent to the search because she had retained a right of access to the home and grounds. It is well established that where two persons have equal rights to the use or occupancy of premises, either may consent to a search and the evidence thus disclosed can be used against either of them. *Mears v. State,* 52 Wis.2d 435, 439, 190

N.W.2d 184 (1971) ; *See also, United States v. Sferas,* 210 F.2d 69, 74 (7th Cir. 1954).

We hold that the right of access retained by Mrs. Verhagen was insufficient to grant her authority to consent to a search. The temporary order of the family court commissioner granted her access for the limited purpose of removing her belongings. Furthermore, by her own testimony, Mrs. Verhagen had given up her rights to use and occupancy of the premises.[2] On the record before us, it cannot be said that Mrs. Verhagen had "access or control for most purposes" or such mutual use of the premises that her husband assumed the risk of her consent to search. *Matlock, supra.*

## OPEN FIELDS DOCTRINE

The State argues that the marijuana found in the patch near the barn is admissible under the "open fields" doctrine. This theory was not presented to the trial court, and we do not have the benefit of any findings of fact by the trial court relating to the open fields question. We must, therefore, make our own independent determination of factual issues upon the evidence before us. *Howland v. State,* 51 Wis.2d 162, 186 N.W.2d 319 (1971) ; *Barnes v. State,* 25 Wis.2d 116, 130 N.W.2d 264 (1964).

The "open fields" doctrine was applied in *Conrad v. State,* 63 Wis.2d 616, 633, 218 N.W.2d 252 (1974) :

> The law in Wisconsin in respect to "open field" searches in areas away from the curtilage, remains unchanged. No warrant is required for a search, and police

---

[2] By the time of the suppression hearing, Mrs. Verhagen had returned to the farm and was again living with the defendant as husband and wife. There was no finding by the trial court relating to her credibility as a witness, and no contradictory evidence. We, therefore, accept her testimony as true.

officers may search such areas above or below the ground undeterred by the Fourth Amendment.

We find insufficient support in the record for the proposition that the marijuana patch was away from the curtilage of the farm buildings.[3] The patch's sprinkler system was connected by a hose to the barn, and the patch was adjacent to a "garden." The distance of the patch from the various buildings was approximated by several witnesses with large disparities. Furthermore, the distance of the barn from the house, and of the patch from the barn, is not significant absent any indication as to direction.

We hold that the burden of proving that the evidence was seized in an open field, in common with other exceptions to the warrant requirement, rests with the State. The State failed to meet its burden of proving that the "open fields" doctrine applied in this case.

In *Conrad*, the court placed the burden on the defendant to prove a subjective and reasonable expectation of privacy in articles placed within the curtilage in an area open to the public. We find insufficient evidence to support the proposition that the marijuana patch was open to the public. While one of the officers testified that it was visible from the road, it appears that none of the officers actually saw the marijuana from the road, since the officers had to ask the defendant's wife for directions to the marijuana patch even though they had had the farm under surveillance for suspected marijuana activi-

---

[3] Blacks Law Dictionary 640 (4th ed. 1968) defines "curtilage" in part as follows:

The curtilage of a dwelling-house is a space, necessary and convenient and habitually used for the family purposes, and the carrying on of domestic employments. It includes the garden, if there be one, and it need not be separated from other lands by fence. (Citations omitted.)

ties for several days prior to the search. Even assuming the possibility of public view of the marijuana patch from the road, the area in question is not "open to the public" or "semi-public" in nature. *Conrad, supra* at 630.

We conclude, therefore, that the marijuana was discovered and seized in violation of the Fourth Amendment to the United States Constitution and Article I, Sec. 11, of the Wisconsin Constitution. The officers had probable cause and sufficient time to get a search warrant. The consent of Mrs. Verhagen exceeded her authority, the State has not proved the applicability of the "open fields" doctrine, and no exigent circumstances have been shown which would justify a warrantless search of the premises. *See generally, Vale v. Louisiana*, 399 U.S. 30, 35 (1970). Accordingly, the marijuana is not admissible as evidence and should have been suppressed. *Alston v. State*, 30 Wis.2d 88, 140 N.W.2d 286 (1966).

## ADMISSIBILITY OF DEFENDANT'S STATEMENT

The defendant was called at work one or two days after the search, and was asked to go to the Sheriff's Office for questioning. The defendant arranged to discuss the matter with the Under-Sheriff on September 13, 1976. An arrest warrant was issued on September 10, 1976, but the defendant was not informed of that fact before the interrogation.

When asked whether he wanted to give a statement, the defendant replied, "sure, might as well." The defendant was informed of his *Miranda* rights, and made a statement admitting that the seized marijuana belonged to him.

The defendant testified that the officers implied that they possessed statements by Mrs. Verhagen and by an inmate in the county jail implicating him in the marijuana sales. The officers denied making any statements

implying that other people had given them information which they were asking Verhagen to admit.

The State argues that the defendant's statement was not a "fruit of the poisonous tree" under *Brown v. Illinois*, 422 U.S. 590 (1975), because it was made five days after the illegal search; it was the product of intervening circumstances; it was given after the defendant was read his *Miranda* rights; and it was not the product of flagrant official misconduct. The passage of five days time, during which the defendant knew that marijuana had been seized from his premises, did not purge the taint of the illegal search. The record discloses no distinguishable means by which the State induced the defendant's statement. Even if the police had information from other sources relating to the defendant's marijuana activities, they were not sufficient to induce a confession absent the illegal search. Likewise, the reading of the defendant's *Miranda* rights did not alter the fact that the search had produced overwhelming evidence of his guilt, a factor which was implicitly exploited by his interrogators. Finally, while the search might not be described as flagrant misconduct by the officers, neither is it excusable for them to have failed to obtain a search warrant.

There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with. But this is not such a case. No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present evidence to a magistrate. These are never very convincing reasons and, in these circumstances, certainly are not enough to by-pass the constitutional requirement." *Johnson v. United States*, 333 U.S. 10, 13 (1948); *Hemmis v. State*, 24 Wis.2d 346, 351–52, 129 N.W.2d 209 (1964).

While each of these factors may, in the appropriate case, lead to a conclusion that the subsequent confession was not an exploitation of the primary illegality, we conclude on the record before us that the defendant's statement was an exploitation of the illegal search, and should have been suppressed. *Wong Sun v. United States,* 371 U.S. 471 (1963).

Accordingly, the defendant's guilty plea is vacated. The judgment of conviction is reversed, and the cause remanded for trial at which the marijuana and the defendant's statement must be excluded.

*By the Court.*—Reversed and remanded with directions.