STATE of Wisconsin, Plaintiff-Respondent,

v.

Gary A. NEHLS, Defendant-Appellant.†

Court of Appeals

*No. 82–1051–CR. Submitted on briefs December 20, 1982.—*
*Decided February 9, 1983.*
(Also reported in 331 N.W.2d 603.)

For the defendant-appellant the cause was submitted on the brief of *Dennis P. Coffey* of *Coffey, Coffey & Geraghty* of Milwaukee.

† Petition to review denied.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Kirbie Knutson,* assistant attorney general.

Before Voss, P.J., Brown and Scott, JJ.

VOSS, P.J. Defendant Gary A. Nehls appeals from an order of the circuit court of Ozaukee county denying his motion to suppress certain physical evidence. Nehls raises two issues on appeal: (1) whether the search of the Nehlses' home was tainted by a prior unlawful search of Nehls' car, and (2) whether the consent to search the Nehlses' home was voluntarily given by Nehls' wife. After reviewing the record, this court agrees with the trial court's determination that the search of Nehls' house was proper and that the consent for the search was voluntarily given by his wife. Accordingly, we affirm.

Nehls had been under investigation for his alleged involvement in marijuana transactions. On October 2 or 3, 1980, the Milwaukee County Sheriff's Department received a tip from an unnamed informant that Nehls would soon be coming into possession of a large quantity of marijuana. Subsequently, it was learned that delivery of a portion of the marijuana was to occur in the early evening hours of October 5, 1980. In response to this information, Milwaukee and Ozaukee county officials initiated surveillance of the Nehlses' residence in Saukville, Wisconsin.

On October 5, 1980, at approximately 7:05 p.m., Nehls left his home and proceeded to a restaurant parking lot in the city of Milwaukee. At this time, Milwaukee county sheriffs surrounded Nehls' car and asked for consent to search it; consent was denied. Nehls and his car were then taken into custody. A warrant to search the car was issued in Milwaukee county. During the search, law enforcement officials found marijuana in the vehicle.

Subsequently, a motion to suppress this evidence was filed in Milwaukee county. After the state conceded that there were insufficient grounds for probable cause, the motion to suppress was granted.

Approximately one hour after Nehls' arrest, a search was conducted of Nehls' Saukville home by Ozaukee county officials. Marijuana was found in the home, which forms the basis for the charge in this appeal. Nehls filed a motion to suppress this evidence; however, the motion was denied by the trial court. Nehls then pled guilty to the charge of possession of a controlled substance with intent to deliver. This plea was entered recognizing Nehls' right to appeal the order denying his motion to suppress. Sec. 971.31(10), Stats.

Nehls first argues that the prior illegal search of his vehicle tainted the subsequent search of his home. Nehls contends that the prior illegal search requires suppression of the later discovered evidence under the "Fruit of the Poisonous Tree Doctrine." *Wong Sun v. United States,* 371 U.S. 471 (1963). We disagree.

As recognized in *Wong Sun,* the critical question is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." (Citation omitted.) *Wong Sun,* at 488. *See also State v. Kraimer,* 91 Wis. 2d 418, 432, 283 N.W.2d 438, 444 (Ct. App. 1979), *affd,* 99 Wis. 2d 306, 298 N.W.2d 568 (1980).

Nehls argues that since the search by the Milwaukee County Sheriff's Department was illegal and that since the course of investigation was a cooperative effort with Ozaukee county officials, the subsequent search was an exploitation of the first search. Nehls cites *United States v. Crews,* 445 U.S. 463 (1980), as authority for the taint allegedly involved here. In *Crews,* the Court stated:

[t]he question before the court is whether the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the "taint"
. . . .

*Id.* at 471. Nehls maintains that there is no "interrupting" circumstances so as to avoid the taint. We disagree.

This court believes that the impetus setting the "chain of causation" in motion was not the prior search. Rather, the impetus for the subsequent search was the tip of an unnamed informant. Furthermore, nothing was obtained in the search of Nehls' car that would prompt a second search of Nehls' home or would assist in locating the marijuana in his home. Both searches, as the state points out, resulted from the same information that the legal authorities received and were logically parallel developments in the investigation. Thus, the search of the car was not a necessary antecedent to the subsequent search of the house.

■

As a result, we do not believe that the search of Nehls' house was exploitative of the information received in the prior search of his car. Instead, the search of Nehls' house was an exploitation of an informant's tip. It should be noted that simply because one course of police action taken in response to the tip was illegal does not *ipso facto* taint another course of action taken by another law enforcement agency on the same tip. This is not to say, however, that a failure of the tip to establish probable cause would not be persuasive upon the issuance of a warrant to search the house. Quite logically, if the information contained in the tip were insufficient for one search, it would most likely be insufficient for another search. However, in this instance, the search of the home was not based upon a warrant but upon the

consent of Nehls' wife. Thus, a clearly independent basis is established for the second search.

The second issue raised by Nehls is whether his wife's consent to allow the authorities to search the house was the product of a free and voluntary will. Nehls argues that the consent was not voluntary due to implied coercion resulting from the circumstances surrounding the search. Specifically, Nehls argues that his wife's fear that if she did not consent, the officers would return with a warrant, resulting in a disruption of her household and the neighborhood, served to make the consent involuntary.

Voluntariness of a consent search is a factual question that must be determined from the totality of the circumstances. *United States v. Hrdlicka,* 520 F. Supp. 403, 409 (W.D. Wis. 1981). Furthermore, the burden is on the state to show the consent was voluntary. *State v. Verhagen,* 86 Wis. 2d 262, 266, 272 N.W.2d 105, 106 (Ct. App. 1978). Thus, the question is whether there was sufficient credible evidence presented to support the trial court's determination that the consent was voluntary. We think there was.

The record reveals conflicting testimony regarding the threat to return with a warrant if Mrs. Nehls refused to give her consent. Mrs. Nehls testified that the officer told her that if she refused, the officer would return with additional manpower and a warrant. The officer, on the other hand, testified that he did not recall giving an opinion as to whether a warrant could be issued. This identical situation was presented in *United States v. Stone,* 471 F.2d 170 (7th Cir 1972), *cert. denied,* 411 U.S. 931 (1973). In *Stone,* the defendant's wife testified that an F.B.I. agent told her that if she did not consent, he would return with a warrant. The

agent testified that to his knowledge, no one stated an opinion as to whether a warrant could be obtained. The *Stone* court stated:

The trial judge heard the testimony of these witnesses and observed their demeanor on the witness stand and believed the testimony of F.B.I. agent Joseph Giglio. There is no basis for overturning this conclusion. Mrs. Stone testified that no threats were made to her by the F.B.I. agents and that she read and signed the consent form voluntarily. We conclude that there was no error in the ruling of the district court.

*Id.* at 173. Similarly, in the present case, the trial court, after observing the demeanor of the witnesses, chose to believe the police officer. On appeal, Nehls has failed to point to anything that persuades us that the trial court erred in believing the police officer's testimony rather than Mrs. Nehls'.

Another circumstance that courts may consider when trying to determine whether or not the consent was voluntarily given is whether the "consenter" assisted in the search. *United States v. Webb*, 633 F.2d 1140, 1142 (5th Cir. 1981). In the case at hand, Mrs. Nehls affirmatively helped the officers find the marijuana. The record shows that after signing the consent form, Mrs. Nehls took the police into the basement and showed them exactly where the marijuana was hidden. Mrs. Nehls has also acknowledged that no one forced or pressured her to show the officers where the marijuana was. Thus, it can clearly be seen that Mrs. Nehls actively and voluntarily helped the police locate the marijuana.

Finally, the fact that Mrs. Nehls may have been upset by the presence of officers at her home and feared the disruption that may have resulted is no basis for a finding of coercion. As the court in *Stone* found: "To hold that the mere condition of being 'upset' by the presence at one's home of F.B.I. agents is enough to

make any consent the product of coercion might effectively foreclose almost all searches conducted pursuant to a voluntary consent. We decline to so hold." *Id.* at 173. Accordingly, we find no basis to justify a reversal of the trial court's determination.

*By the Court.*—Order affirmed.