STATE of Wisconsin, Plaintiff-Respondent,

v.

Kenneth M. SOBCZAK, Defendant-Appellant.†

Court of Appeals

*No. 2010AP3034–CR. Submitted on briefs October 19, 2011.
—Decided December 21, 2011.*

2012 WI App 6

(Also reported in 808 N.W.2d 730.)

† Petition for Review filed.

410

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ryan J. Hetzel* of *Hetzel & Nelson, LLC*, West Bend.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Warren D. Weinstein*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Neubauer, P.J., Reilly, J., and Neal Nettesheim, Reserve Judge.

¶ 1. REILLY, J.   Kenneth M. Sobczak invited his girlfriend to stay with him for the weekend at his parents' house while his parents were away on vacation. When Sobczak left for work, he told his girlfriend she could use his laptop. She discovered child pornography on the computer and contacted the police. When an officer arrived, the girlfriend let him into the house and permitted him to search and seize Sobczak's laptop. Sobczak was convicted of possession of child pornography. Sobczak appeals, arguing that the girlfriend did not have the authority to allow the police to enter the house and search and seize his laptop. We hold that the girlfriend did have such authority and affirm his conviction.

## BACKGROUND

¶ 2.   Sobczak, who lived with his parents, invited his girlfriend to stay with him for the weekend while his parents were on vacation. His girlfriend arrived at the Sobczak residence on Friday and spent the night. When Sobczak left for work on Saturday, he agreed to let his girlfriend use his laptop computer while he was gone. While using his laptop, she discovered child pornography and called her grandmother to ask her to call the police for her.

¶ 3.   A police officer arrived and told the girlfriend that he needed to view the video that she found. She gave the officer permission to enter the residence and to view Sobczak's laptop. The girlfriend located the video for the

officer and played it for him. The officer seized the laptop and later obtained a search warrant to search the rest of the residence.

¶ 4. Sobczak filed a motion to suppress, arguing that his girlfriend did not have actual or apparent authority to consent to a search of the residence. The circuit court denied the motion, ruling that the girlfriend had authority as a guest of the house to allow police to enter the home and examine Sobczak's laptop. Sobczak was convicted of possession of child pornography and appeals.

## STANDARD OF REVIEW

¶ 5. The issue of whether police conducted an unreasonable search and seizure is a question of constitutional fact. *State v. Griffith*, 2000 WI 72, ¶ 23, 236 Wis. 2d 48, 613 N.W.2d 72. A question of constitutional fact is a mixed question of fact and law that we review with a two-step process. *State v. Post*, 2007 WI 60, ¶ 8, 301 Wis. 2d 1, 733 N.W.2d 634. First, we review the circuit court's findings of historical fact under the clearly erroneous standard. *Id.* Second, we review the application of those facts to constitutional principles de novo. *Id.*

## DISCUSSION

¶ 6. The issue in this case is whether the girlfriend—as a guest in Sobczak's parents' home—had the authority to consent to the officer's entry into the Sobczak residence and to the search and seizure of Sobczak's laptop.[1] We hold that she did.

---

[1] While Sobczak's parents owned the home, the State concedes that Sobczak was a joint occupant.

¶ 7. In *United States v. Matlock*, 415 U.S. 164 (1974), the United States Supreme Court first articulated the notion that an individual can give consent to search a property even if he or she is not the owner of the property. A third party may consent to a search of property if he or she possesses "common authority over or other sufficient relationship to the premises or effects sought to be inspected." *Id.* at 171. "Common authority" is defined as mutual use of the property and joint access or control for most purposes. *Id.* at 171 n.7.

¶ 8. The Wisconsin Supreme Court adopted and expanded upon *Matlock* in *State v. Kieffer*, 217 Wis. 2d 531, 577 N.W.2d 352 (1998). In *Kieffer*, Scott Garlock was arrested for drug possession. *Id.* at 534. He told the police that he bought the drugs from John Zattera and that Zattera was staying with Scott Garlock's father, Robert. *Id.* Without obtaining a search warrant, the police went to Robert's home to look for Zattera. *Id.* When the officers arrived at Robert's residence, he told them that Zattera was staying in a loft area above his garage, along with Robert's daughter and son-in-law, Dawn and John Kieffer. *Id.* at 535. Robert stated that he owned the house and loft, and that while there was no formal lease agreement between him and the Kieffers, the Kieffers would sometimes help pay the electrical bills. *Id.* As Robert led the officers to the garage, he told them that he normally knocked on the door out of respect. *Id.* at 536. When Robert and the officers arrived at the top of the stairs of the loft, they found the lock on the door unlocked. *Id.*

¶ 9. Further facts revealed that the Kieffers used their own money to convert the loft area into a living space. *Id.* The Kieffers also viewed Robert as their landlord and lived there by his rules. *Id.* Additionally, Robert agreed to never enter the loft without first asking

for the Kieffers' permission, and the Kieffers retained the only set of keys to the loft. *Id.* Finally, Dawn Kieffer testified that she felt that she and her husband could exclude whomever they wanted from the loft. *Id.*

¶ 10.   Robert testified that he entered the loft without knocking. *Id.* at 537. Once inside the loft, the officers discovered drug paraphernalia. *Id.* at 538. Kieffer admitted to having purchased drugs from Zattera. *Id.* The first issue before the supreme court was whether Robert had actual authority to consent to the search of the loft. *Id.* at 542–43. The court first noted that the record established that the Kieffers had a separate household in Robert's garage loft and that Robert did not have "joint access or control." *Id.* at 546. Additionally, the court found it significant that Robert knocked on the loft door before entering, indicating that Robert respected the Kieffers' privacy. *Id.* Furthermore, the Kieffers viewed Robert as their landlord and believed they had the right to exclude anyone from the loft. *Id.* Under these facts, the court held that Robert did not have actual common authority to consent to a search of the loft. *Id.* at 547.

██

¶ 11.   The State also argued that even if Robert did not have actual authority to consent to the search of the loft, the police reasonably believed that Robert had apparent authority to consent. *Id.* When a third party lacks actual authority to consent to a search of a residence, the police may still conduct a search via apparent authority if they reasonably believed that the third party had the authority to consent. *Id.* at 548. The court held that because the officers only asked Robert questions about whether there was a written lease agreement and whether the Kieffers paid rent, the officers lacked a reasonable basis to conclude that Robert had apparent authority to consent to a search of the loft. *Id.* at 554.

¶ 12. In contrast, Sobczak's girlfriend had actual authority to consent to the officer's entry into the house and to the search and seizure of Sobczak's laptop. While a mere guest in a home may not ordinarily consent to a search of the premises, the analysis is different when the guest is more than a casual visitor but instead has "the run of the house." 4 WAYNE R. LAFAVE, SEARCH & SEIZURE, § 8.5(e) (4th ed. 2011). Under those circumstances, the guest may consent to a search of the residence. *Id.* Sobczak's girlfriend was invited to stay at Sobczak's house for the weekend. Nothing in the record indicates that Sobczak restricted her use of the property during the weekend. Sobczak gave her permission to use his laptop and allowed her to stay in the residence by herself while he was at work. As the Supreme Court said in *Matlock*, if a third party has "mutual use of the property" and "joint access or control for most purposes," then the third party may consent to a search of the property regardless of whether he or she owns the property. *Matlock*, 415 U.S. at 171 n.7. The girlfriend thus had authority to allow the officers to enter the residence and to search and seize Sobczak's computer.

¶ 13. We stress that our holding is limited to the facts of the case, namely, that the girlfriend had the authority to consent to police entry into Sobczak's home and to a search and seizure of his laptop. We are not holding that the girlfriend's status as a houseguest gave her carte blanche to consent to a search of all the contents in the home. Rather, her authority to consent to a search was limited to the property that she possessed "common authority" over. As a weekend houseguest who was permitted to stay in the home by herself, the girlfriend had the authority to receive people into the home, and thus had the authority to permit the officer to

416

enter. Similarly, Sobczak gave her permission to use his computer, so she had the authority to consent to the officer's search and seizure of that item. We make no comment on the other areas of the home that the girlfriend may have had "common authority" over, as it is not germane to this case.

¶ 14. Sobczak also argues that *State v. Verhagen*, 86 Wis. 2d 262, 272 N.W.2d 105 (Ct. App. 1978), and *State v. McGovern*, 77 Wis. 2d 203, 252 N.W.2d 365 (1977), dictate a holding that his girlfriend did not have actual authority to consent to a search. In *Verhagen*, Mr. Verhagen's wife signed a consent form authorizing the police to search their home. *Verhagen*, 86 Wis. 2d at 266. At the time Mrs. Verhagen signed the form, she had initiated divorce proceedings and had moved herself and their children out of the home. *Id.* After Mrs. Verhagen signed the consent form but prior to the search being conducted, a court commissioner awarded use of the property to Mr. Verhagen and ordered him to allow Mrs. Verhagen to enter the property to remove any furniture or furnishings she wanted. *Id.* The police accompanied Mrs. Verhagen to the house to collect her belongings, and when Mr. Verhagen left the house, a search was conducted. *Id.* Mrs. Verhagen helped the officers locate marijuana. *Id.* This court held that even though Mrs. Verhagen was a joint tenant and co-owner of the property, she did not have the authority to consent to a search. *Id.* at 267. The court commissioner's order only gave her authority to enter the house to remove her belongings, and as Mrs. Verhagen had given up her right to use and occupy the house, we held that she did not have "access or control for most purposes," nor mutual use of the premises. *Id.* at 268.

417

¶ 15. In *McGovern*, the police responded to a noise complaint. *McGovern*, 77 Wis. 2d at 206. As an officer approached the house, he saw in the window what appeared to be two people passing a cigarette. *Id.* The officer knocked on the door and was let in by an individual who was living not in the house, but in a tent in the yard. *Id.* at 206–07. The court held that the tent dweller could not consent to police entry, as there was no evidence that he shared mutual use of the property or that he shared joint access or control of the property for most purposes. *Id.* at 214–15.

¶ 16. Neither of these two cases compel the result that Sobczak seeks. In *Verhagen*, Mrs. Verhagen was no longer residing in the home and had given up her rights to use and occupy the home. The only reason she was at the property at the time of the search was to collect her belongings. She therefore did not share mutual use of the house with Mr. Verhagen. In *McGovern*, the individual who consented to the search did not live in the house but rather lived in a tent outside. Sobczak's girlfriend, by contrast, was staying at Sobczak's house for the weekend. There was no testimony that her use was restricted in any way, and she was allowed to stay in the house by herself while Sobczak was at work. The girlfriend had the entire use of and access to the Sobczak house that the wife in *Verhagen* and the tent dweller in *McGovern* did not. *Verhagen* and *McGovern* are therefore not controlling.

¶ 17. As we hold that Sobczak's girlfriend had actual authority to consent to the officer's entry into the house and to the search and seizure of Sobczak's laptop, we need not discuss whether she had apparent authority.

418

## CONCLUSION

¶ 18. We agree with the circuit court that Sobczak's girlfriend had the authority to allow the police to enter the house and to search and seize Sobczak's laptop. Sobczak's conviction for possession of child pornography is affirmed.

*By the Court.*—Judgment affirmed.