STATE of Wisconsin, Plaintiff-Respondent,

v.

Kris O. EDGEBERG, Defendant-Appellant.

Court of Appeals

*No. 94–0527–CR. Submitted on briefs September 19, 1994.—Decided October 18, 1994.*

(Also reported in 524 N.W.2d 911.)

340

On behalf of defendant-appellant, the cause was submitted on the brief of *William R. Lamb* of *Doar, Drill & Skow, S.C.* of Baldwin.

On behalf of plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Thomas J. Balistreri*, assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. Kris Edgeberg appeals from a judgment of conviction for possession of a controlled substance, marijuana, with intent to manufacture or deliver. *See* §§ 161.14(4)(t) and 161.41(1)(h)1, STATS. Edgeberg asserts that this court should reverse the trial court decision denying Edgeberg's suppression motion. Edgeberg claims the search warrant pursuant to which the evidence was found was based on police observations made during an unlawful police entry into Edgeberg's home. Because we conclude that the police observations did not constitute a search under the plain view doctrine, we affirm the judgment of conviction.

## BACKGROUND

The essential facts are not in dispute. On June 15, 1990, a police officer on patrol was dispatched to investigate a complaint about a barking dog. Upon arrival in the neighborhood, the officer stopped his squad car to listen for the barking. The officer was approached by a person who stated that the barking dog lived in a nearby house and pointed to the house at which the dog was located, Edgeberg's residence.

The officer drove to the house and approached a porch or vestibule-like addition to the house, which,

because of traffic patterns on the lawn, appeared to the officer to be the main entrance to the house. As he approached the house, the officer observed a large dog in the backyard. As the officer approached, the dog was barking.

Photographs indicate that there was a wooden screen door at the entrance to the porch. The wooden screen door opened with a lightweight latch. The door could be locked from the inside but was unlocked. Edgeberg acknowledged that a visitor would have to pass through two doors before entering "the living quarters of the house" and that the interior wooden door was "a second door to get into the house"; he acknowledged that the porch has an outside door and then an inside door that "leads into the residence." He also acknowledged that "it's about six feet into that enclosure before you're at the front door of the residence." The second door was flush with the original exterior wall of the house. This door was made of wood, had three windows, and led directly to the living area. Edgeberg's father, the owner of the house, identified the wooden door as the "front" door. There was no doorbell at either door. Edgeberg's washer and dryer and work clothes were inside the porch.[1]

The officer testified that looking through the screen of the outside door, he saw the inner wooden door "immediately inside." He testified that in the course of his duties he had encountered porches similar to Edgeberg's. He said it was community practice for

---

[1] Edgeberg described the porch as his "laundry room and bathroom." The record discloses that the addition contained a bathroom, but was separated from the entryway-laundry area by a wall with no window. There was no access from the porch entryway into the bathroom; the only entry to the bathroom was through the kitchen and the living room.

visitors to knock on the main front door of houses with porches similar to Edgeberg's. He testified to his general procedure when approaching a house with such a porch, and stated that if he can see through the exterior door, and can see another door that appears to lead into the living room, and if that interior door is open, he knocks on the outside door; if the exterior door is closed and it is "obviously a porch type area," he enters the porch and knocks on the door that appears to lead to the living area. The officer also testified that although there were a washer and dryer with items stacked on them, the appliances appeared nonfunctional and the work clothes were stacked with other items he thought were "debris." He stated that he did not think by entering the porch he was entering anyone's "private space."[2]

The officer opened the screen door, entered the porch and knocked on the inner wooden door. As he knocked, he looked through the window of the door into the house and saw marijuana plants growing in flowerpots against the living room wall opposite. Based on this observation, the officer obtained a search warrant. The next day, with the search warrant, the police seized marijuana, the marijuana plants and other contraband from Edgeberg's home.

## DISCUSSION

■■■

Whether a police officer's conduct violates the fourth amendment prohibition on unreasonable searches and seizures is a question of law this court

---

[2] Although Edgeberg refers to "valuables" on the porch, the record reflects that the only items on the porch were the washer, dryer, a coat rack and work clothes.

reviews without deference to the trial court. *State v. Woods*, 117 Wis. 2d 701, 712, 345 N.W.2d 457, 463 (1984). The exclusionary rule applies only to evidence seized as the result of an illegal search or seizure. *Segura v. United States*, 468 U.S. 796, 804, 806 (1984). We must first therefore determine whether there was a search within the meaning of the fourth amendment. *See State v. Whitrock*, 161 Wis. 2d 960, 970-71, 468 N.W.2d 696, 700 (1991). A search occurs when the police infringe on an expectation of privacy that society considers reasonable. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). If there is no such infringement, there is no search. *Illinois v. Andreas*, 463 U.S. 765, 771 (1983). Thus, under the plain view doctrine: "[O]bjects falling within the plain view of an officer who has a right to be in the position to have the view are subject to valid seizure and may be introduced in evidence." *State v. Bell*, 62 Wis. 2d 534, 540, 215 N.W.2d 535, 539 (1974) (citations omitted). A person has no reasonable expectation of privacy in an item that is in plain view. *Horton v. California*, 496 U.S. 128, 133 (1990). A seizure following a plain view is not the product of a search. *Bell*, 62 Wis. 2d at 540, 215 N.W.2d at 539.

The plain view exception has three prerequisites. The officer must have a prior justification for being in the position from which the "plain view" discovery was made; the evidence must have been in plain view of the discovering officer; and the item seized, in itself or in itself with facts known to the officer at the time, provides probable cause to believe there is a connection between the evidence and criminal activity. *State v. Guy*, 172 Wis. 2d 86, 101-02, 492 N.W.2d 311, 317 (1992).

The second and third prerequisites are plainly satisfied. Marijuana plants in themselves are evidence of a crime, and if the officer had prior justification for his presence at the inner door, the marijuana was in plain view.

The question is whether the officer had prior justification for his presence or, in other words, had a right to be where he was. The officer's right to be in the place where the view occurs is fundamental to the validity of what follows. *State v. McGovern*, 77 Wis. 2d 203, 211, 252 N.W.2d 365, 369 (1977). Although Edgeberg hints that the officer's entry was merely a pretext to search for evidence of controlled substances, and although the officer testified that he knew who Edgeberg was and suspected Edgeberg of drug-related activities, the trial court found that, as the officer testified, the officer knocked on the door of the house for the purpose of following up on the dog complaint. The court also found that the officer was unaware, prior to arrival, of the interior layout of the house, or planned to look through the windows of the inner wooden door. The trial court found that the plants were in the officer's plain view as he stood knocking at the door. We uphold the trial court's factual findings as long as they are not clearly erroneous. *Thibadeau v. Thibadeau*, 150 Wis. 2d 109, 115, 441 N.W.2d 281, 283 (Ct. App. 1989). The trial court's findings are not clearly erroneous.

We conclude, under the circumstances presented, that there was no reasonable expectation of privacy that should bar the officer's approach to the inside door of the residence. Although Edgeberg's porch may have been a laundry area, it was also an entryway. The unlocked screen door presenting a view of the inner

"front door" and the community practice of entering the porch to knock suggest no expectation of privacy. Regarding protected areas in residential premises, " '[a] sidewalk, pathway, common entrance or similar passageway offers an implied permission to the public to enter which necessarily negates any reasonable expectancy of privacy in regard to observations made there.' " 1 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 2.3(c) at 392-93 (2d ed. 1987) (quoting *Lorenzana v. Superior Court*, 511 P.2d 33, 35 (Cal. 1973)). " '[P]olice with legitimate business may enter the areas of the curtilage which are impliedly open to use by the public' " and in doing so " 'are free to keep their eyes open ....' " LaFAVE, *supra*, at 393 (quoting *State v. Crea*, 233 N.W.2d 736, 739 (Minn. 1975)). This means that if police use normal means of access to and from the house for some legitimate purpose, it is not a fourth amendment search for police to see from that vantage point something in the dwelling. *Id.* at 393-94.

These circumstances can be distinguished from, for example, a closed garage, *see Bies v. State*, 76 Wis. 2d 457, 462, 251 N.W.2d 461, 464 (1977) (a garage with its doors shut is "not in any sense a semi-public area"); or a locked hallway accessible only to a "very confined" group. *See United States v. Case*, 435 F.2d 766, 768-69 (7th Cir. 1970) (hallway found to be not open to the public where hallway was kept locked, lock to a doorway changed by defendant, hallway used almost exclusively by proprietors of stores in the building). Although the issue was different, these circumstances are essentially identical to the situation in *McGovern*, in which the Wisconsin Supreme Court tacitly approved police walking through a "partially enclosed porch" in order to knock on the "front door" of a house. *Id.* at 206, 252 N.W.2d at 367. *McGovern* barred evi-

dence observed only after the officer stepped through that front door into the residence itself.

Whether there is a reasonable expectation of privacy in a given area must be decided on a case-by-case basis. If Edgeberg expected that visitors would not step inside to knock on the inner door, his expectation was unreasonable and not protected by the fourth amendment. *See Jacobsen*, 466 U.S. at 113; *State v. Howard*, 176 Wis. 2d 921, 926-27, 501 N.W.2d 9, 11-12 (1993). Because we conclude as a matter of law that this is a plain view case, we need not address the trial court's conclusion that the officer's conduct fell within the community caretaker exception.

## CONCLUSION

The officer's conduct was not a search. Under the facts presented, Edgeberg's growing of marijuana plants plainly visible from his inner front door exposed the plants to the public. That which is knowingly exposed to the public is not subject to fourth amendment protection. *Katz v. United States*, 389 U.S. 347, 351 (1967); *see Whitrock*, 161 Wis. 2d at 973-74, 468 N.W.2d at 702. Therefore the trial court judgment is affirmed.

*By the Court.*—Judgment affirmed.