STATE of Wisconsin, Plaintiff-Respondent,

v.

Ralph H. DAVIS, Defendant-Appellant.

Court of Appeals

*No. 2010AP2191–CR. Submitted on briefs February 15, 2011.
—Decided April 26, 2011.*

2011 WI App 74

(Also reported in 798 N.W.2d 902.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Patrick M. Donnelly* and *Chandra N. Harvey*, assistant state public defenders, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Aaron R. O'Neil*, assistant attorney general.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. HOOVER, P.J.   Ralph Davis appeals a judgment of conviction for possession of a firearm by a felon. Davis argues the search warrant for his home was invalid because it was based on an officer's prior warrantless entry into his home through an attached garage. The circuit court concluded the officer's warrantless entry was excused by the good faith exception, because the officer did not subjectively intend to enter the home or intend to search for evidence of any crime.

The State abandons the good faith rationale on appeal. We conclude that the officer unreasonably invaded the home's curtilage when he entered the attached garage. We therefore reverse the judgment and direct the circuit court to suppress all evidence discovered during the initial warrantless entry or the subsequent search.

## BACKGROUND

¶ 2. Davis filed a complaint alleging his property had been stolen by a forest service employee. In July 2008, deputy Jason Fischer and a forest service officer visited Davis's residence on State Highway 32 in Oconto County. Fischer gave Davis a statement form and said he would return the following day to collect it. The next day, Fischer and deputy Ryan Zahn returned to the residence to retrieve the statement form.

¶ 3. Davis's residence consists of a modified trailer home, with an attached foyer connecting to a two-car garage. The home's windowless front entry door opens to the foyer, which is approximately four to six feet wide and runs lengthwise alongside much of the trailer. All three components—the trailer, foyer, and garage—are sided with white panels, and they outwardly appear to constitute a single structure. Below, we include a photograph of the front of the home, with the garage on the left, foyer and entry door in the middle, and trailer on the right; and a close-up photograph of the door and entryway:

¶ 4.  When returning for the statement form, the deputies approached the front door of the residence and knocked for several minutes without a response. Zahn decided to "see if someone was in the back yard." On his way, Zahn called into an open overhead garage door and received no response. Zahn proceeded into the garage.

Once inside, he "noticed there was an actual door to the residence" at the back of the garage that was not visible from outside. Because it was dark in the garage, Zahn used a flashlight to illuminate his path. Zahn called for Davis "half a dozen times" as he walked to the back of the garage. Zahn proceeded through the open doorway and up a few steps into the windowless foyer.[1]

¶ 5. Across from that doorway from the garage into the foyer was another doorway, leading into the trailer. Because the foyer was dark, Zahn shined his flashlight to light his way. He also shined it down the foyer to the front door, where Fisher was still knocking, and observed a rifle leaning against the wall. Zahn then reached the doorway leading into the trailer. At that point, Davis appeared. Zahn explained he was there to collect the statement, and asked if they could turn on a light because he would "feel safer if a light was on." Davis told Zahn he was not welcome and was trespassing. Zahn ultimately collected the statement, but not before Davis asked him three times to leave.

¶ 6. After returning to the station that day, Zahn learned Davis had a felony conviction for failure to pay child support. A search warrant was obtained forty-nine days later, resulting in a search of Davis's home and seizure of multiple firearms.

¶ 7. Davis was charged with twelve counts of felony possession of a firearm, contrary to Wis. Stat. § 941.29(2)(a).[2] Davis moved to suppress all evidence,

---

[1] The State describes the foyer as a porch. While the actual term used is ultimately unimportant, we observe that in common parlance, porch would not typically refer to a windowless room with a windowless exterior door. Here, the foyer might also be described as a hallway or an enclosed breezeway.

[2] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

arguing Zahn had illegally entered his home.[3] The circuit court initially granted the motion, ruling:

> Zahn's entry into the open garage door to look for the defendant was legal. However, when the deputy entered the partitioned and enclosed porch area, it was part of the defendant's residence and the deputy did not have any authority to be there. Any evidence obtained as a result of that entry will be suppressed.

However, the court later granted the State's motion for reconsideration, concluding the good faith exception applied because "Zahn did not do anything intentionally or willfully wrong." The court observed:

> [I have] seen all the diagrams, all the pictures, and to be honest with you, it's very difficult with those diagrams and those pictures and the testimony of both [Davis] and [Zahn] to really kind of figure out, if you've never been in there before, exactly where an open garage ends and the house actually begins.

Davis subsequently pled guilty to one count of possession of a firearm, with the remaining counts read in. Davis now appeals.

## DISCUSSION

¶ 8.    The Fourth Amendment to the United States Constitution and art. I, § 11 of the Wisconsin Constitution guarantee that persons shall be free from unreasonable searches and seizures. Whether a police officer's conduct violates the prohibition on unreasonable

---

[3] Davis also asserted the probable cause for the search warrant was stale. Although there was argument at the initial motion hearing, the court did not rule on the issue and Davis did not renew the argument. Davis does not raise the issue on appeal.

searches and seizures is a question of law we review without deference to the trial court. *State v. Edgeberg*, 188 Wis. 2d 339, 344–45, 524 N.W.2d 911 (Ct. App. 1994). However, we uphold the circuit court's factual findings as long as they are not clearly erroneous. *Id.* at 346. A search within the meaning of the Fourth Amendment occurs when the police infringe on an expectation of privacy that society considers reasonable. *Id.* at 345. A person has no reasonable expectation of privacy in an item that is in plain view of an officer who has a right to be in the position to have the view. *Id.*

¶ 9.   The protections of the Fourth Amendment extend beyond the walls of the home to the "curtilage." *Oliver v. United States*, 466 U.S. 170, 180 (1984). "[C]urtilage is the area to which extends the intimate activity associated with the sanctity of a [person]'s home and the privacies of life, and therefore has been considered part of the home itself for Fourth Amendment purposes." *Id.* (citation omitted). The extent of the curtilage depends upon the nature of the premises, and might be interpreted more liberally in the case of a rural single-owner home, as opposed to an urban apartment.[4] *See* 1 WAYNE

---

[4] Where the issue is disputed:

[C]urtilage questions should be resolved with particular reference to four factors:   the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.  .... [T]hese factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's "umbrella" of Fourth Amendment protection.

*United States v. Dunn*, 480 U.S. 294, 301 (1987) (citations omitted).

R. LaFave, Search and Seizure § 2.3(d), 587 n.135 (4th ed. 2004) (citing *Commonwealth v. Thomas*, 267 N.E.2d 489 (Mass. 1971)).

¶ 10. Law enforcement is not, however, completely prohibited from entering the curtilage. *See Edgeberg*, 188 Wis. 2d at 347 ("Police with legitimate business may enter the areas of the curtilage which are impliedly open to use by the public and in doing so are free to keep their eyes open.") (citations omitted). Thus, "if police use normal means of access to and from the house for some legitimate purpose, it is not a [F]ourth [A]mendment search for police to see from that vantage point something in the dwelling." *Id.* "Regarding protected areas in residential premises, a sidewalk, pathway, common entrance or similar passageway offers an implied permission to the public to enter which necessarily negates any reasonable expectancy of privacy in regard to observations made there." *Id.* (citations omitted).

¶ 11. Here, Davis argues Zahn unreasonably entered the attached garage. Failing that, Davis further contends Zahn unreasonably entered the foyer.[5] Conceding that the attached garage should be considered curtilage, the State responds that the garage and foyer were both impliedly open to the public because the respective doors were open.

¶ 12. We accept the parties' characterization of the attached garage as part of the home's curtilage. Indeed, aside from viewing it as the home itself, it is difficult to imagine a scenario where the typical at-

---

[5] Davis further argues that the good faith exception cannot apply. However, the State explicitly abandons that rationale in its response brief.

tached garage could be considered not curtilage. See *State v. Leutenegger*, 2004 WI App 127, ¶ 21 n.5, 275 Wis. 2d 512, 685 N.W.2d 536 ("Published decisions . . . consistently hold that an attached garage is part of the curtilage."); *Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 885 (9th Cir. 1990); *State v. Legg*, 633 N.W.2d 763, 768 (Iowa 2001); *State v. Blumler*, 458 N.W.2d 300, 302 (N.D. 1990); *see also Coffin v. Brandau*, 609 F.3d 1204, 1214–18 (11th Cir. 2010) (Wood, J., dissenting) (attached garage is part of the home itself, thus no need to consider *Dunn* curtilage factors; citing cases), *rehearing en banc granted, opinion vacated*, 614 F.3d 1240 (Aug. 2010).

¶ 13.   While the parties agree the attached garage was curtilage, they propose different standards for determining whether Zahn's entry violated the Fourth Amendment. The State proposes the general *Edgeberg* test, which asks whether there is "implied permission to the public to enter." *Edgeberg*, 188 Wis. 2d at 347. The State then argues there was implied permission to enter Davis's garage because the door was open. Davis, however, contends we adopted a more restrictive test in *Leutenegger*. There, albeit in a footnote, we observed:

> [I]n a particular case, a house and attached garage may be situated such that entry through an open garage door to an "exterior" house door within the garage may appear to be the least intrusive means of establishing contact with an occupant. Under such circumstances, [police entry into] an attached garage *might* be [permissible] for the limited purpose of making contact with an occupant, similar to some porches.

*Leutenegger*, 275 Wis. 2d 512, ¶ 21 n.5. The State concedes that, if *Leutenegger* states the test, Zahn's entry was unreasonable and violated the Fourth Amendment.

¶ 14.  We see no conflict between the *Edgeberg* and *Leutenegger* tests. *Leutenegger* effectively applies the *Edgeberg* test to the limited circumstance of an attached garage. As a general matter, it is unacceptable for a member of the public to enter a home's attached garage uninvited. We do not think this premise is subject to reasonable disagreement. This premise is true regardless whether an overhead or entry door is open.[6] Thus, generally, under *Edgeberg*, an attached garage will never be impliedly open to public, i.e., police, entry. *Leutenegger*, however, recognizes that there may be an exception to that general rule if, in a given circumstance, it reasonably appears that entry into the attached garage is the least intrusive means of attempting contact with persons inside the home.

¶ 15.  Therefore, Zahn's warrantless entry into Davis's attached garage violated the Fourth Amendment under *Edgeberg*, and as the State concedes, the intrusion is not saved by the potential *Leutenegger* exception. There is no dispute that the front entry door appeared to be a less intrusive means of attempting contact. Moreover, even if we assumed, arguendo, that entry through the open door of an attached garage was generally permissible under *Edgeberg*, it was unreasonable for Zahn to proceed to the rear of the garage to a door that was not visible from outside. In fact, it was even more unreasonable because Zahn had to utilize a flashlight to find his way through the dark garage. Given these facts, no person could reasonably conclude that the open overhead garage door was an open invitation for the

---

[6] Leaving a garage door open might reduce the resident's privacy interest and permit plain view observations from outside the garage, but that is a matter distinct from physical intrusion.

public to enter and make contact with Davis inside the home.

¶ 16. Because Zahn had no right to enter the garage, the plain view doctrine cannot apply to allow evidence of the firearm he later observed inside the foyer. *See Edgeberg*, 188 Wis. 2d at 345–46 ("The officer's right to be in the place where the view occurs is fundamental to the validity of what follows."). The search warrant police eventually obtained was based on Zahn's observation. Therefore, all evidence discovered during the subsequent search must also be suppressed as fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 484–86 (1963).

*By the Court.*—Judgment reversed and cause remanded with directions.