COURT OF APPEALS
DECISION
DATED AND FILED

February 26, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1240-CR**

Cir. Ct. No. 2018CT1220

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

LOIS M. BERTRAND,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Waukesha County: MICHAEL P. MAXWELL, Judge. *Reversed and cause remanded with directions*.

¶1 REILLY, P.J.[1] Lois M. Bertrand appeals from a judgment of conviction for operating a motor vehicle while intoxicated (OWI), second offense, with a passenger under the age of sixteen pursuant to WIS. STAT. §§ 346.63(1)(a)

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

and 346.65(2)(f)2. Bertrand argues that the circuit court erred in denying her motion to suppress based on her unlawful seizure within the curtilage of her home. As the officer's intrusion into Bertrand's attached garage occurred without a warrant and without probable cause or exigent circumstances, we conclude that the circuit court erred in denying Bertrand's motion to suppress. We reverse.

## BACKGROUND

¶2 On September 6, 2018, Bertrand was called by her son's school to pick him up because he missed the bus. She did exactly that, took him to the store, and then drove him to her ex-husband's house—who has primary, but not sole, custody—to drop him off. The OWI investigation in this case began when a school employee smelled the odor of alcohol on Bertrand when she encountered her at the school, which the employee relayed to her supervisor, who relayed it to the principal of the school, who then called police. No one from the school reported any other signs of impairment related to Bertrand, such as impaired driving, slow or slurred speech, or bloodshot or glassy eyes.

¶3 A police officer drove to Bertrand's house and knocked on the door, but no one answered. The officer then parked outside of Bertrand's home and called Bertrand, who reported that she had picked up her son from school and was on the way to drop him off at her ex-husband's home. The officer testified that he noticed no signs of impairment during the conversation. Apparently, the call disconnected and the officer called Bertrand back. Her phone must have unknowingly picked up because the officer could hear her having a "normal conversation" with her son about "school and other matters." The officer then heard a conversation between Bertrand and her ex-husband, which the officer described as "an angry, older male voice." There was never any mention of alcohol heard during this conversation.

¶4      The officer then called Bertrand's ex-husband "to confirm that he had his son." Bertrand's ex-husband told the officer "he was angry that the school called [Bertrand] and not him as he is the primary custodian of the child. [The ex-husband] also stated he was upset that they would allow his ex-wife to be driving around with their son at what he described as likely a .15 BAC" and "highly intoxicated."

¶5      Bertrand arrived home, and the officer observed her drive down the street, into her driveway, and into her garage, without any indication of impaired driving. The officer pulled his squad car into the driveway behind Bertrand and entered Bertrand's attached garage to speak with her.[2] After a brief conversation where Bertrand answered all the officer's questions appropriately and the officer did not observe any indicators of impairment, Bertrand, presumably in an attempt to end the encounter, reached for and placed her hand on the handle of the door leading to the inside of her home. The officer grabbed Bertrand's left arm and prevented her from entering her home. It is at this point that the officer testified he smelled an odor of alcohol. The officer asked Bertrand to remove her sunglasses, and he observed Bertrand's eyes to be bloodshot and glassy.

¶6      After conducting field sobriety tests, Bertrand was arrested for OWI. Bertrand filed a Motion to Suppress Fruits of an Unreasonable Search and Seizure, which was denied by the circuit court after a hearing. The State did not argue any exceptions to the warrant requirement, either at the hearing or in briefing to this court, and the circuit court, in its oral ruling, did not address the fact that Bertrand's

---

[2] The officer originally testified that Bertrand parked her car in the driveway and they "had a short discussion in the driveway" during which time they were standing "in the driveway in front of the garage." After the officer refreshed his recollection with his police report that he made shortly after the arrest, he corrected his testimony, indicating that Bertrand pulled into her garage and that he approached her and began talking to her in her garage. Based on the officer's corrected testimony, we conclude that he entered the garage and engaged Bertrand in her garage during all applicable time periods for the purpose of this decision.

seizure occurred in the curtilage of Bertrand's home. Bertrand pled guilty. This appeal follows.

## DISCUSSION

¶7 We review an order granting or denying a motion to suppress as a question of constitutional fact. *State v. Dearborn*, 2010 WI 84, ¶13, 327 Wis. 2d 252, 786 N.W.2d 97. We review the circuit court's findings of fact under a clearly erroneous standard, but "[t]he application of constitutional principles to those facts is a question of law that we review de novo." *Id.*

¶8 A police officer's *warrantless* entry into a private residence, either to make an arrest or to search, is presumptively prohibited. *See Payton v. New York*, 445 U.S. 573, 586 (1980); *State v. Reed*, 2018 WI 109, ¶¶52, 54 & n.27, 384 Wis. 2d 469, 920 N.W.2d 56. "It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984) (citation omitted); *see also Silverman v. United States*, 365 U.S. 505, 511 (1961) ("At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable government intrusion."). *Payton* makes clear that "police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002).

¶9 It is well settled that "[t]he protection provided by the Fourth Amendment to a home also extends to the curtilage of a residence." *State v. Martwick*, 2000 WI 5, ¶26, 231 Wis. 2d 801, 604 N.W.2d 552. An attached garage is considered the home's curtilage. *See State v. Davis*, 2011 WI App 74, ¶12, 333 Wis. 2d 490, 798 N.W.2d 902 (collecting cases); *see also State v. Dumstrey*, 2016 WI 3, ¶35, 366 Wis. 2d 64, 873 N.W.2d 502 (explaining that "courts have

consistently held" single family home's attached garage "constitutes curtilage"). Bertrand was seized by the officer in the curtilage of her home when the officer grabbed her arm to prevent her from entering her home's interior. *California v. Hodari D.*, 499 U.S. 621, 626 (1991) (explaining that a person is seized when there is "a laying on of hands or application of physical force to restrain movement" and the person submits).

¶10    Our supreme court recently had occasion to address a similar issue involving warrantless entry into a garage in *State v. Weber*, 2016 WI 96, 372 Wis. 2d 202, 887 N.W.2d 554.  There, a deputy attempted to conduct a traffic stop on Weber by activating his emergency lights after observing that he had a defective brake lamp and was weaving over the fog line on the highway. *Id.*, ¶¶2, 4.  Weber failed to yield to the deputy, instead pulling into his own driveway and attached garage. *Id.*, ¶4.  The deputy pulled into the driveway behind Weber with his emergency lights still activated. *Id.*  Weber exited his vehicle and proceeded toward a door leading into his house. *Id.*, ¶5.  The deputy ran toward Weber telling him to stop, Weber ignored the instructions, and the deputy "entered the garage and 'secured [Weber's] arm' as Weber was 'just inside his [house's] door' at the top of the steps." *Id.* (alterations in original).  The question was "whether the deputy's warrantless entry into Weber's garage and subsequent arrest of Weber violated the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution, or whether the need for a warrant was obviated by the exigent circumstance of the deputy's 'hot pursuit' of a fleeing suspect who had committed jailable offenses." *Weber*, 372 Wis. 2d 202, ¶2.

¶11    The court in *Weber* accepted that the garage "was protected under the Fourth Amendment as curtilage of [the] home." *Id.*, ¶18 n.5.  It then determined that in order to uphold a warrantless entry into the attached garage, the state "must

show[] that the warrantless entry was both supported by probable cause and justified by exigent circumstances." *Id.*, ¶19 (alteration in original; citation omitted). Ultimately, the court determined that the deputy's actions were constitutional as the exigent circumstance[3] of hot pursuit justified the warrantless entry.[4] *Id.*, ¶3. Our supreme court explained that the deputy "was attempting to apprehend Weber, who was fleeing [the deputy's] lawful traffic stop on a public highway. There was no delay between Weber's illegal actions and [the deputy's] pursuit of Weber." *Id.*, ¶36. The court also noted that the deputy's entry and apprehension of Weber accomplished no more than was absolutely necessary to halt Weber's escape and was a last resort as he had already attempted to stop Weber by activating his emergency lights and calling after him. *Id.*, ¶38. It was Weber's actions that forced the officer to enter the garage, and the officer ended the intrusion promptly by staying in the garage no longer than needed. *Id.*

¶12 We conclude that the facts in this case fall short of those in *Weber*. Critically, the State does not argue before this court that any exigent circumstances existed nor that the officer had probable cause to arrest Bertrand at the time she was seized in her garage. The circuit court also did not address, much less find, exigent

---

[3] There are four well-recognized categories of exigent circumstances that authorize "warrantless entry into a home: (1) hot pursuit of a suspect, (2) a threat to the safety of a suspect or others, (3) a risk that evidence will be destroyed, and (4) a likelihood that the suspect will flee." *State v. Weber*, 2016 WI 96, ¶18, 372 Wis. 2d 202, 887 N.W.2d 554 (citation omitted). As applicable in *Weber*, "[t]he basic ingredient of the exigency of hot pursuit is 'immediate or continuous pursuit of [a suspect] from the scene of a crime.'" *Id.*, ¶28 (alteration in original; citation omitted).

[4] We note that in *Weber*, three justices supported the conclusion and rationale of the lead opinion in all respects. Justice Daniel Kelly's concurrence argued that there was a lack of probable cause to believe Weber committed a jailable offense before entering his garage, but Justice Kelly conceded that if probable cause existed, then the officer's warrantless entry into the garage was lawful under the "hot pursuit" doctrine. *Weber*, 372 Wis. 2d 202, ¶¶46, 54, 66 (Kelly, J., concurring).

circumstances. Instead, the State makes three arguments on appeal. First, the State argues that the officer had reasonable suspicion to temporarily detain Bertrand (conduct a **Terry**[5] stop) in order to investigate a potential drunk driving incident.[6] According to the State, the statements of the school principal and Bertrand's ex-husband created reasonable suspicion.

¶13 For the sake of our analysis, we will accept that the officer had reasonable suspicion as it clarifies the point we wish to make,[7] which is that reasonable suspicion does not create an exception to the warrant requirement under the Fourth Amendment for an in-home search or seizure under these circumstances. The State cites to **Terry v. Ohio**, 392 U.S. 1, 22 (1968), for the proposition that officers are allowed "to perform brief investigations with less than probable [cause] to determine if a person has committed a crime." **Terry** does not authorize an officer to enter a private home. *See, e.g.*, **Moore v. Pederson**, 806 F.3d 1036, 1054 (11th Cir. 2015) ("Home may be where the heart is, but it cannot be where the government

---

[5] **Terry v. Ohio**, 392 U.S. 1 (1968). "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." **Id.** at 22.

[6] The State also argues that the officer had reasonable suspicion to investigate for "officer safety." The State does not argue any statutory or case law authority for this proposition on appeal. Accordingly, we deem this argument abandoned, **Reiman Assocs., Inc. v. R/A Adver., Inc.**, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292 (Ct. App. 1981), and will address it no further, except to note that the phrase "officer safety" is not a talisman that can be invoked at anytime to avoid a constitutional violation.

[7] The State concedes that the odor of alcohol alone is not sufficient to contribute to a finding of reasonable suspicion. *See* **State v. Gonzalez**, No. 2013AP2585-CR, unpublished slip op. ¶¶17-18 (WI App May 8, 2014); **County of Sauk v. Leon**, No. 2010AP1593, unpublished slip op. ¶28 (WI App Nov. 24, 2010); **State v. Meye**, No. 2010AP336-CR, unpublished slip op. ¶¶1, 6 (WI App July 14, 2010); WIS JI—CRIMINAL 2663 ("Not every person who has consumed alcoholic beverages is 'under the influence.'"); *but see* **State v. Powers**, 2004 WI App 143, ¶13, 275 Wis. 2d 456, 685 N.W.2d 869 ("[I]n Wisconsin, a layperson can give an opinion that he or she believes another person is intoxicated."); **State v. Mays**, No. 2018AP571-CR, unpublished slip op. ¶16 (WI App Nov. 7, 2018) (same).

is—at least for purposes of conducting a *Terry*-like stop, in the absence of exigent circumstances." (footnote omitted)); *United States v. Perea-Rey*, 680 F.3d 1179, 1188 (9th Cir. 2012) ("[T]he *Terry* exception to the warrant requirement does not apply to in-home searches and seizures." (citation omitted)).

¶14 Simply because the officer in this case had reasonable suspicion to conduct a *Terry* stop and temporarily detain Bertrand in a public setting, does not necessitate the conclusion that the officer did not need a warrant or probable cause and exigent circumstances to enter Bertrand's garage and seize her. *See Weber*, 372 Wis. 2d 202, ¶19. The State has not argued or identified case law suggesting an exception to the warrant requirement under *Terry* that would allow police to detain a person after he or she has entered his or her home. The officer in this case had neither a warrant or probable cause and exigent circumstances; therefore, Bertrand's seizure inside her garage violated the Fourth Amendment.

¶15 The State next argues that the officer had "enough information" to request that Bertrand submit to field sobriety tests. Accepting again that the officer had reasonable suspicion matters little to our analysis as at the time of the officer's request Bertrand had already been seized in her garage. In summary, the resolution of this case does not rest on whether the officer had reasonable suspicion to request that Bertrand submit to field sobriety tests; it hinges on what happened before the officer entered Bertrand's curtilage and seized her and whether the officer had either a warrant or probable cause and exigent circumstances. The State does not argue the officer had any of these. By the time the officer requested that Bertrand submit to field sobriety tests, the State had already violated her constitutional rights.

¶16 Finally, the State argues that there is no reasonable expectation of privacy in an area of the curtilage that is impliedly open to the public. The State

8

also notes that the circuit court found that the officer encountered Bertrand in her driveway and then moved into the open garage. We disagree. It is true that the officer's initial recollection at the hearing indicated that he encountered Bertrand in her driveway, but upon reviewing his police report, the officer corrected his testimony to indicate that Bertrand parked in her garage and he entered the garage to speak with her. Further, the evidence also clearly establishes that when the officer grabbed Bertrand to keep her from entering her home both the officer and Bertrand were in her garage.

¶17 The State cites no cases where an attached garage is considered impliedly open to the public, and in fact our supreme court in *Weber*, which actually dealt with entry into an attached garage, never made such a suggestion. *See Weber*, 372 Wis. 2d 202, ¶142 & n.1 (Rebecca Grassl Bradley, J., dissenting). Instead, the State cites to *State v. Edgeberg*, 188 Wis. 2d 339, 524 N.W.2d 911 (Ct. App. 1994), which was a search case where the officers entered the front porch to conduct a knock and talk regarding a noise complaint and saw marijuana plants. The court found the officers were there for legitimate business in a place on the curtilage that was impliedly open to use by the public and they were free to keep their eyes open. *Id.* at 346-48. *Edgeberg* is inapplicable as the issue was whether the front porch was considered curtilage. A front porch, depending on the circumstances, may be open to the public for visitors to come and knock on the door, but an attached garage is not open to the public in the same manner. *See Davis*, 333 Wis. 2d 490, ¶14 ("As a general matter, it is unacceptable for a member of the public to enter a home's attached garage uninvited. We do not think this premise is subject to reasonable disagreement. This premise is true regardless whether an overhead or entry door is open. Thus, generally, under *Edgeberg*, *an attached garage will never be impliedly open to public, i.e., police, entry*." (emphasis added; footnote omitted)).

¶18 What is clear from this case is that the officer's entry into Bertrand's attached garage for the purpose of investigating a crime was a constitutional violation. "[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *Payton*, 445 U.S. at 586. The State has not argued nor did the circuit court find that exigent circumstances or probable cause existed, which would have allowed the officer to follow Bertrand into her garage pursuant to *Weber*. The officer was not "forced to enter the garage" as a result of Bertrand's actions as in *Weber*. *See Weber*, 372 Wis. 2d 202, ¶38. Even if the officer had reasonable suspicion of an OWI for a brief *Terry* investigation, he did not have probable cause to arrest for that offense and, therefore, had no basis for entering Bertrand's home/curtilage without a warrant.

¶19 Accordingly, we reverse the judgment of conviction and remand with directions to the circuit court to grant Bertrand's suppression motion.

*By the Court.*—Judgment reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.