COURT OF APPEALS
DECISION
DATED AND FILED

May 11, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1014-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2017CM2829**

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

CHRISTOPHER D. WILSON,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: DAVID L. BOROWSKI, Judge. *Affirmed.*

¶1 DONALD, J.[1] Christopher D. Wilson appeals a judgment convicting him of operating a motor vehicle while intoxicated (OWI) as a second

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

offense and endangering safety by use of a dangerous weapon while under the influence of an intoxicant. Wilson argues that the police unlawfully entered his backyard and seized him, and the circuit court erred in denying his motion to suppress the evidence. We conclude that Wilson's motion to suppress was properly denied because the officers' entry into the backyard and interaction with Wilson were covered by the "knock and talk" exception to the Fourth Amendment's warrant requirement. Accordingly, we affirm.

## BACKGROUND

¶2 The record before the circuit court reflects that on January 16, 2017, around 1:43 p.m., Officer Nathan Siefert and another officer were dispatched to the 1400 block of Rawson Avenue in Milwaukee to investigate a reckless driver complaint from a 911 caller.

¶3 Upon arrival, Officer Siefert saw an unoccupied silver BMW matching the caller's description in an alley. The car was running and had the back hatch open. Officer Siefert ran the car's license plate and found that the car was not registered to any nearby address. Officer Siefert observed that the residence's fence was "ajar."

¶4 Officer Siefert contacted the 911 caller. The caller stated that the car was "all over the roadway … changing speeds, just driving very erratically." The caller observed the car pull into the area where Officer Siefert eventually located it. The caller stated that the driver climbed onto the fence, reached over the fence, opened it, and entered the backyard. The caller described the driver to be a white male wearing bright orange shoes.

¶5      At that point, Officer Siefert believed he was dealing with either a burglary or an operating while intoxicated driver, or both. Officer Siefert thought it was a burglary because the car was not registered to a nearby address and was left running. He further thought the hatch was open for a quick getaway.

¶6      Officer Siefert moved a garbage can out of the way, entered the fenced backyard, did not see anyone, walked to the side door of the garage, and knocked. Officer Siefert's partner accompanied him.

¶7      Wilson, a white male wearing glasses, an orange shirt, bright orange shoes, and a black hat, opened the door. Officer Siefert asked Wilson about his driving, whether he had been drinking, smoking, or taking medications, and if he lived at the house. According to Officer Siefert, Wilson had a slurred speech and stumbled on the concrete garage floor, which was dry and level at that time.

¶8      Wilson asked to return to the BMW so he could get his identification. When they returned to the car, Wilson tried to open the front passenger door, but it was locked. Officer Siefert observed a hand gun inside the car and then patted Wilson down for weapons. During the pat down, the officer found a pill bottle in Wilson's pocket.

¶9      After discovering that Wilson's driver's license was revoked, Officer Siefert arrested Wilson. Later, a blood test came back positive for methadone and alprazolam.

¶10     Wilson filed a motion to suppress all of the evidence the police obtained after the "unlawful seizure" of Wilson in the backyard.

¶11    The circuit court held a motion hearing.[2]  Testimony was taken from Officer Siefert, and Siefert's body camera video was moved into evidence.  The circuit court ultimately denied Wilson's motion to suppress.  The court concluded that the warrantless entry into Mr. Wilson's backyard was "justified by exigent circumstances of a hot pursuit of a fleeing suspect who had committed jailable offenses."  The court also found that Officer Siefert had probable cause to believe that the jailable offenses of either criminal trespass or burglary was being committed.

¶12    On May 23, 2019, Wilson pleaded guilty to OWI as a second offense and endangering safety by use of a dangerous weapon while under the influence of an intoxicant.  Possession of a prescription drug without a valid prescription was dismissed and read in.  Wilson was sentenced to a total of four months in jail.

## DISCUSSION

¶13    The Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

¶14    The protections that attach to the home also extend to the "curtilage of a residence."  *State v. Martwick*, 2000 WI 5, ¶26, 231 Wis. 2d 801, 604 N.W.2d 552.  "[T]he curtilage is the area to which extends the intimate activity associated with the 'sanctity of a [person's] home and the privacies of life' and therefore has been considered part of [the] home itself for Fourth Amendment purposes."

---

[2]  The Honorable Jean Kies presided over the motion hearing.

*Oliver v. United States*, 466 U.S. 170, 180, 104 S. Ct. 1735 (1984) (citation omitted). This includes "the land immediately surrounding and associated with the home." *Id.*

¶15 Whether police conduct violated the constitutional guarantee against unreasonable searches and seizures is a question of constitutional fact. *State v. Griffith*, 2000 WI 72, ¶23, 236 Wis. 2d 48, 613 N.W.2d 72. When presented with a question of constitutional fact, we engage in a two-step inquiry. *See State v. Dumstrey*, 2016 WI 3, ¶12, 366 Wis. 2d 64, 873 N.W.2d 502. First, the circuit court's findings of historical fact will be upheld unless they are clearly erroneous. *Id.*, ¶13. Second, we "apply the constitutional principles to the facts at hand to answer the question of law." *Id.* (citation omitted).

¶16 On appeal, as he did in the circuit court, Wilson argues that the police violated his Fourth Amendment rights by entering into his fenced backyard and seizing him.

¶17 The State disagrees with Wilson and argues that exigent circumstances—specifically "hot pursuit"—justified the officers' entry into Wilson's backyard. Alternatively, the State argues that the officers' entry into the backyard was a permissible "knock and talk" investigation.

¶18 As discussed below, we agree with the State that the officers conducted a lawful "knock and talk" investigation.[3] Accordingly, because this

---

[3] The circuit court did not determine whether the officers' entry into the backyard was a permissible knock and talk. However, we may affirm on grounds other than those upon which the circuit court relied. *See State v. Earl*, 2009 WI App 99, ¶18 n.8, 320 Wis. 2d 639, 770 N.W.2d 755.

issue is dispositive, we do not address whether exigent circumstances justified the entry into the backyard. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

¶19 To effectuate a knock and talk at a residence, police do not need probable cause or a warrant. *See City of Sheboygan v. Cesar*, 2010 WI App 170, ¶9 n.5, 330 Wis. 2d 760, 796 N.W.2d 429.

¶20 In *Florida v. Jardines*, 569 U.S. 1, 133 S. Ct. 1409 (2013), the United States Supreme Court recognized the constitutionality of the knock and talk exception to the Fourth Amendment's warrant requirement. *Jardines* explained that an "implicit license" exists that allows visitors to "approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Id.* at 8. Accordingly, a police officer without a warrant may approach a home and knock because that is no more than what a private citizen may do. *Id.*; *see also*, *State v. Edgeberg*, 188 Wis. 2d 339, 347, 524 N.W.2d 911 (Ct. App. 1994) (observing that police may enter areas of the curtilage that are impliedly open to use by the public).

¶21 Wilson argues that the officers were under "no illusion they were approaching the front door of a home" and their path to the garage's side door was not "open to use by the public."

¶22 Although *Jardines* referred to an approach to the home by "the front path," courts have recognized that there are instances in which officers are justified in approaching by an alternative or back entryway. *See, e.g.*, *Alvarez v. Montgomery Cnty.*, 147 F.3d 354, 356 (4th Cir. 1998) (stating that the Fourth Amendment does not prohibit police from entering into a backyard when

circumstances indicate they might find the homeowner there); ***United States v. Garcia***, 997 F.2d 1273, 1279-80 (9th Cir. 1993) (stating that "[i]f the front and back of a residence are readily accessible from a public place, like the driveway and parking area ... the Fourth Amendment is not implicated when officers go to the back door reasonably believing it is used as a principal entrance to the dwelling").

¶23    Under the specific facts of this case, we conclude that an "implicit license" existed for the officers to enter the backyard in the middle of the day from the alley, walk to the side garage door, and knock.  Although the backyard was surrounded by a fence, the gate was open.  It was not latched or locked shut.  As a result, there is no clear indication that visitors were intended to be excluded from entering.  *See **Edgeberg***, 188 Wis. 2d at 346-47 (distinguishing the entry of a porch with an unlocked screen door leading to an interior front door from the entry of a locked hallway that was only accessible to a limited group).

¶24    Moreover, there was reason to believe that someone was in the backyard.  Prior to entering the backyard, Officer Siefert spoke to the 911 caller who stated that the driver of the car that was "all over the roadway … changing speeds, just driving very erratically" had opened the fence and entered the backyard.  *See **Alvarez***, 147 F.3d at 358-59 (finding that there was no Fourth Amendment violation when officers received a 911 call about an underage drinking party and proceeded to the backyard of a residence after seeing a sign indicating the party was in the back).

¶25    Thus, here, we conclude that the officers conducted a permissible knock and talk investigation.  Wilson had no obligation to open the door or speak with the officers.  *See **Kentucky v. King***, 563 U.S. 452, 469-70, 131 S. Ct. 1849

(2011). It was not until *after* Wilson left the backyard and returned to the car that any seizure occurred.

¶26     Therefore, for the reasons above, we reject Wilson's argument that he was unlawfully seized in the backyard and we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.